Ray G. FINDORFF, Relator,

v.

PINKERTON'S, INC., et al., Respondents.

No. 50707.

Supreme Court of Minnesota.

July 3, 1980.

Robert R. Johnson, Minneapolis, for relator.

Joseph Stocco, Minneapolis, for respondents.

WAHL, Justice.

Petitioner Ray G. Findorff appeals from a decision by a divided Workers' Compensation Court of Appeals, holding him not entitled to either permanent or temporary total disability benefits as a result of a work-related injury to his right arm on February 3, 1976. The Court of Appeals affirmed the compensation judge's award of $4,590 for a 25% permanent partial disability of his arm, and ordered the employer and insurer to continue to provide necessary medical treatment. We affirm.

The fact that a person has worked, as this remarkable man did, long past retirement age, does not affect that person's eligibility for workers' compensation benefits resulting from a work-related injury, if the facts support such an award. The question for our decision in this case is whether the evidence, viewed in the light most favorable to the Court of Appeals' finding, supports the Court's determination that Mr. Findorff was not permanently or temporarily totally disabled.

Ray Findorff was born in 1903, graduated from high school in 1920, and in 1941 completed vocational training at Dunwoody Institute to do sheet metal work. Beginning in the late 1930's and continuing until 1962, he performed "medium to heavy" sheet metal work. In 1962, when Mr. Findorff's family was told that he had only four years to live, he retired from sheet metal work. Still alive and strong in 1966, he decided to return to work, and began employment as a security guard with Pinkerton's, Inc., deliberately limiting his hours of employment so as to earn less than the income limitations then affecting his receipt of Social Security benefits. Beginning in 1975, the year Mr. Findorff reached age 72, those income limitations were no longer applicable, and he was placed full-time as a guard at Western Union, to replace temporarily another employee who was hospitalized. His work at Western Union required him to sit in the lobby and allow people to enter the building by pushing a button.

On February 3, 1976, petitioner, then age 72, slipped on ice while working at Western Union, and fell, injuring his right arm and shoulder. Mr. Findorff visited his family physician, Dr. Daniel Conlon, who X-rayed the shoulder and placed it in a sling. He was able to continue working for Pinkerton's at Western Union for eight weeks after the accident, with his arm in a sling.

On Friday, April 2, 1976, Mr. Findorff was terminated by Pinkerton's. Findorff testified that he was given notice of termination on April 1; his supervisor, Mr. Chadwick, testified that Findorff was notified two weeks in advance of his termination. Chadwick indicated that Findorff's termination resulted from a "crack-down" of Pinkerton's mandatory age 68 retirement policy and had no connection with his injury. He indicated, further, that loss of one of Pinkerton's clients necessitated his replacing Mr. Findorff on the Western Union

job with a younger full-time employee. Mr. Findorff himself testified that as early as January of 1976, he had been apprised of the company's retirement policy but was told he need not "worry about it." He further testified that two weeks before termination he became aware that the loss of another account could jeopardize his job, and that when he was terminated, "there was some mention made of changing rules or something like that and the age I was * * *."

Chadwick testified, and the Court of Appeals found, that in the two weeks following his termination, Mr. Findorff was twice called and asked to fill in on a one-day basis as a security guard at Deaconess Hospital but refused to do so. Mr. Findorff denied ever being contacted after termination regarding part-time employment. He did testify, however, that Chadwick mentioned that Pinkerton's might be interested in employing him part-time occasionally, but "I said I thought I deserved something better after the time I put in. * * * I felt I had something better coming. I was teed off, really." On redirect examination, Mr. Findorff stated that his reluctance to accept part-time, sporadic employment stemmed from the fact that due to his shoulder injury he felt incapable of the strenuous work required occasionally at the other locations where Pinkerton's might place him.

In August of 1976, Mr. Findorff returned his uniform and badge to Pinkerton's. After that he contacted three other security services but did not fill out applications when informed that a physical examination would be required, because "I couldn't pass the physical." Findorff indicated repeatedly, however, that he is capable of performing and willing to perform a sedentary job similar to the one he last had at Western Union, one where his physical strength would not be called upon in the occasional course of his responsibility to restrain persons physically. At the hearing, he was asked, "Do you feel you could handle that [Western Union] job today?" Mr. Findorff answered, "Yes, sir, I could, I think, very much."

Mr. Findorff maintains that the condition of his arm and shoulder as a result of the February 3, 1976, injury is the only factor preventing him from working. The injury limits his ability to move his arm and to lift things with it. He suffers pain intermittently, every day, and loses sleep six nights of each week. Cold weather bothers him. He has difficulty tying his tie, putting on his heavier coat, and reaching forward to shake hands or put a key into a lock. Although he once enjoyed bowling, golf, and biking, Mr. Findorff was obliged to give up all these activities. Mr. Findorff did testify, however, that he is able to mow the lawn with a power mower, change storm windows, scrape old paint, drive two or three thousand miles per year and do some woodworking using his left hand.

The Court of Appeals' finding that Mr. Findorff suffered a 25% permanent partial disability of the right arm was amply supported by expert testimony and is not challenged here. All of the experts agreed that Mr. Findorff cannot, in his present condition, adequately perform either sheet metal work or security work requiring him to physically restrain individuals. All also agreed that he is capable of doing sedentary work which would allow him to sit at a desk, similar to the work he did at Western Union before his termination. Joseph Steen, a rehabilitation psychologist, stated at the second hearing, "It is my opinion that he can't perform on a sustained basis the requirements of any job for which he has the experience, skill or training," noting that the injury was to Mr. Findorff's dominant hand. On cross-examination, however, he conceded that he had not attempted to place Mr. Findorff in any position, that he had placed persons with more severe disabilities than Mr. Findorff's in full-time jobs, and that he had placed an 84-year-old person in full-time work.

■ In *Schulte v. C. H. Peterson Construction Co.*, 278 Minn. 79, 153 N.W.2d 130 (1967), this court explicated the definition

of "total disability" within the context of the Workers' Compensation Act:[1]

> [A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

278 Minn. at 83, 153 N.W.2d at 133–34. We noted that the concept of total disability depends primarily on the employee's ability to find and hold a job, not on his physical condition. The employee in that case had accepted work as a filling station attendant, a maintenance man, and an emery wheel operator, but was not able to continue at those jobs longer than a few months, due to back pain. The court affirmed the commission's decision that the employee was temporarily totally disabled by a back injury resulting in a 25% permanent partial disability of the back during his periods of unemployment. Similarly, in *Naebers v. Shell Oil Co.*, 302 Minn. 544, 224 N.W.2d 160 (1974), we affirmed a temporary total disability award to a truck driver who suffered a 35% permanent partial disability to his back. In *Bertsch v. Varnum Lumber and Fuel Co.*, 303 Minn. 545, 228 N.W.2d 228 (1975), we affirmed a permanent total disability award to an employee who suffered a 50% permanent partial disability to his left foot and ankle, noting that his education and work history limited his employment opportunities to manual labor and that "his disability restricted those skills which are necessary to a manual laborer." 303 Minn. at 546, 228 N.W.2d at 229. The marginal income he had earned as an upholsterer did not preclude such an award.

■ In *Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185 (Minn.1978), we rejected the employer's argument that a finding of total disability is improper where the em-

ployee made no attempt to find unskilled light work he was capable of doing. That fact may have evidentiary value, but we will not require an employee to seek and be denied employment as a prerequisite to his claim for total disability benefits. In *Scott*, it was enough for the employee to introduce testimony from an employment expert that no work which the claimant was capable of performing was available in the community. 267 N.W.2d at 189. *Accord, Smith v. Civic Center Chrysler*, 270 N.W.2d 276 (Minn. 1978)

■ In two recent decisions, this court has affirmed findings of the commission that the claimant employee had voluntarily removed himself from the labor market. One who has voluntarily retired and withdrawn from the labor market is not eligible for total disability benefits. *Saenger v. Liberty Carton Co.*, 281 N.W.2d 693 (Minn. 1979); *Joens v. Campbell Soup Co.*, 281 N.W.2d 695 (Minn.1979). In *Henry v. Sears, Roebuck and Co.*, 286 N.W.2d 720 (Minn.1979), where the Workers' Compensation Court of Appeals discontinued the employee's temporary total disability benefits, this court remanded for specific findings that his temporary disability had ended or that he had voluntarily retired. With regard to that second question, "[t]he most relevant evidence in the record [was] Henry's statement that he intended to continue working as long as he was able to work." 286 N.W.2d at 723.

■ Decisions of the Court of Appeals must be reviewed in the light most favorable to the Court's findings, and its findings "will not be disturbed unless consideration of the evidence and inferences permissible therefrom clearly require reasonable minds to adopt contrary conclusions." *Naebers v. Shell Oil Co.*, 302 Minn. 544, 546, 224 N.W.2d 160, 162 (1974). This standard of

---

1. Total disability is defined statutorily as follows:

> Subd. 5. Total disability. The total and permanent loss of the sight of both eyes, the loss of both arms at the shoulder, the loss of both legs so close to the hips that no effective artificial members can be used, complete and

permanent paralysis, total and permanent loss of mental facilities, or any other injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability. Minn. Stat. § 176.101, subd. 5 (1978).

limited review was reaffirmed in *Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185, 189 (Minn.1978). It is the Court of Appeals, not the judge, whose decision must be reviewed in this light. *Saenger v. Liberty Carton Co.*, 281 N.W.2d 693, 695 (1979).

In the instant case, the Court of Appeals noted that Mr. Findorff was terminated because of Pinkerton's mandatory retirement policy, not because of the injury. The Court determined that the employee removed himself from the labor market when he, in fact, refused part-time work for an employer that had part-time work available that he could do and that he made no effort to seek employment within his physical limitations (parking lot attendant, messenger, etc.).

We are satisfied that the Court of Appeals' determination denying Mr. Findorff's permanent total disability claim was warranted by the evidence. The record shows that Mr. Findorff testified on cross-examination that he did not want to do part-time work, that he thought he had something better coming, that he was "teed off" about being retired and simply did not want to have part-time employment requiring his going to various and sundry places. Yet he repeatedly stated, and the experts concurred, that he is capable and very willing to return to the kind of security job he was doing at Western Union when he was terminated. *Compare Brening v. Roto-Press, Inc.*, 306 Minn. 562, 237 N.W.2d 383 (1975). In this light, the Court of Appeals' finding that he made no serious effort to obtain employment in the community becomes significant. Here, unlike in *Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185 (Minn.1978), there is no evidence establishing that no work for which the employee is qualified can be found in the community. The Court of Appeals' finding that Mr. Findorff has not established permanent and total disability is not clearly erroneous.

Affirmed.