John H. **FRENCH**, Respondent,

v.

**MINNESOTA CASH REGISTER and
Travelers Insurance Company,
Relators.**

No. C9-83-836.

Supreme Court of Minnesota.

Dec. 30, 1983.

John G. Ness, Alex B. Leibel & Associates, Minneapolis, for relators.

Timothy J. McCoy, Grose, Von Holtum, Sieben & Schmidt, Ltd., Minneapolis, for respondent.

KELLEY, Justice.

Employee, John H. French, sought compensation for temporary total disability from April 3, 1981. The Workers' Compensation Court of Appeals, reversing a compensation judge's denial of the claim, awarded employee benefits for temporary partial disability from April 3, 1981, to May 31, 1981, at his temporary total disability rate and from June 1, 1981, to November 17, 1982, at a rate based on a finding that his earning capacity after June 1, 1981, had been $3.95 an hour for a 25-hour work week. Relators, Minnesota Cash Register and its compensation insurer, challenge the decision on several grounds. We affirm in part and reverse in part.

Employee sustained an admitted injury on January 20, 1981, when a 60-pound box slipped from a pile he was stacking and struck him on the top of his right shoulder. His work, in addition to keeping inventory records, required him to unload and store materials and to fill and ship orders to customers. Following the injury he continued his job despite severe pain in his shoulder. Ten days later, when the pain had not improved, he consulted Dr. Robert Goblirsch. An X-ray disclosed degenerative changes in the acromioclavicular (AC) joint, and Dr. Goblirsch advised the employee to rest his shoulder. Employee claimed that in succeeding weeks he asked his supervisor, Dale Schutt, and the employer's general manager, David Minnich, for lighter work, but none was furnished. They insisted that lighter work was available and that the employee was told to avoid lifting and any other duties which would aggravate his shoulder. At Dr. Goblirsch's direction employee took a week off during February to rest and underwent physical therapy during the last two weeks of March. The employee said that these treatments caused his condition to become much worse. On April 3, 1981, after again requesting lighter work, he quit. He returned on April 10, 1981, for a prearranged discussion with Minnich about his employment, but the manager was not in the office.

In May 1981 Dr. Goblirsch referred employee to Dr. J. Howard Ritchie, an orthopedic surgeon, who also diagnosed post-traumatic arthritis in the right AC joint and thought surgery would relieve employee's pain. He suggested that employee take a month to consider this option but said that he could work while doing so. Employee decided to obtain a second medical opinion and saw Dr. John Hartwig, also an orthopedic surgeon, on July 8, 1981.

The employer sent employee a letter on June 1, 1981, offering him "light duty" at an hourly rate of $3.95, considerably less than the weekly wage of $210 he was earning when he quit. Employee did not accept this offer because, he said, his shoulder was still too sore. The offer required that he begin work by June 8, 1981.

Dr. Hartwig also obtained X-rays which he interpreted to show a partial shoulder separation. He has treated employee with intermittent injections which gave him temporary relief, but also advised surgery. Employee said at the compensation hearing in November 1982 that he would have surgery in early 1983. Dr. Hartwig felt the employee could "use but not abuse" his shoulder and could do light work, including lifting up to 25 pounds occasionally, but could not perform activities requiring repeated motion. Dr. Peter J. Strand, an orthopedic surgeon who examined employee on behalf of relators, diagnosed a contusion at the AC joint with preexisting degenerative arthritis, but not a shoulder separation. He concluded employee had a 5 percent permanent partial disability of the shoulder but was not totally disabled from work.

At the compensation hearing employee testified that he had made many applications for employment, both in person and through written resumes, and had not been offered work. Two rehabilitation consultants expressed conflicting opinions on whether employee could perform work utilizing business training which he had obtained a few years before working for Minnesota Cash Register.

After reviewing the evidence, the Court of Appeals agreed the employee was entitled to receive compensation from April 3 to May 31, 1981, for temporary partial disability at his temporary total disability rate because he had no earning capacity during that period. The majority of the court further agreed he was entitled to receive compensation from June 1, 1981, to November 17, 1982, the date of the compensation hearing, for continuing temporary partial disability at a rate based on their finding that he had reduced earning ability during this period and that such ability "was that of earning $3.95 per hour for a 25-hour work week." [1]

In seeking reversal relators initially argue that, contrary to employee's testimony, he was told at all times after the injury to avoid work which would aggravate his shoulder. They contend that light work was available to the employee in April of 1981 at the wage he was then earning and that he quit contrary to medical advice, as a consequence of which they insist that he did not prove that the injury resulted in impaired earning capacity. Despite these claims, the findings that employee had in fact no earning ability between April 3 and May 31, 1983, and reduced earning ability thereafter will not be overturned unless they are manifestly contrary to the evidence or unless inferences from the evidence would clearly require reasonable minds to adopt a contrary conclusion. *Kirchner v. County of Anoka*, 339 N.W.2d 908 (Minn.1983). The evidence concerning whether light work was available to employee is in conflict. Employee's version is that he repeatedly asked for such work and none was given to him. He also testified his condition was so aggravated by physical therapy he could not work at the time he quit. *Cf., Brening v. Roto-Press, Inc.*, 306 Minn. 562, 237 N.W.2d 383 (1975). We are compelled to conclude that employee's testimony and the subsequent diagnosis of a partial shoulder separation by Dr. Hart-

wig, furnish sufficient evidentiary support for the finding, that he had no earning ability between April 3 and May 31, 1981.

With respect to the finding of reduced earning ability after June 1, 1981, relators urge employee's refusal to accept the offer of light work made to him on that date requires denial of compensation thereafter. We do not agree. Employee testified that his shoulder was still very sore when he received the offer; it was open only until June 8, 1981, and gave him almost no information about what kind of work he was to do. Moreover, the evidence permits the inference that the seriousness of his injury had not been recognized by the treating doctors or by the employer.[2] Under the circumstances we decline to hold that refusing the offer barred employee from further compensation.

Relators' finally claimed there was no evidentiary support for the determination that employee's earning ability after June 1, 1981 was "that of $3.95 per hour for a 25-hour work week." This hourly rate represented what the employer was willing to pay for the "light duty" offered employee. Had he accepted the offer, the rate presumptively would have been a measure of his earning capacity. *Roberts v. Motor Cargo, Inc.*, 258 Minn. 425, 104 N.W.2d 546 (1960). In light of that fact and of employee's inability to find other employment, the offered rate was properly considered as evidence of reduced earning ability. However, our review of the record discloses no evidence that the offer was for a 25-hour work week unless the statements by Minnich and Schutt that the work offered was part time in nature, are a sufficient basis for an inference that the employment offer was for 25 hours a week. The evidence considered as a whole does not reasonably support this inference. The letter containing the employment offer gives no suggestion that it was for less

---

1. The dissenting judge thought that employee was not entitled to compensation after November 1, 1981.

2. According to employee, the general manager had expressed the belief that employee was not hurt at all.

than full time, and Minnich testified that "we were certainly willing to provide 40 hours of employment." No other evidence contradicts this testimony. Consequently, we are compelled to reverse the finding of fact and conclusion of law relating to employee's earning capacity after June 1, 1981, and remand for the substitution of a finding and conclusion conforming to the evidence.

Employee is awarded attorneys fees of $400.

Affirmed in part, reversed in part, and remanded.