**John WESLEY, Respondent,**

v.

**CITY OF DETROIT LAKES and Western National Mutual Insurance Company, et al., Relators.**

**No. C5–83–963.**

Supreme Court of Minnesota.

March 2, 1984.

Fitch & Johnson, Minneapolis, for relators.

Cahill, Cahill, Mills & Marquardt, Moorhead, for respondent.

COYNE, Justice.

In a prior compensation proceeding employee John Wesley was found to have sustained a 15-percent permanent partial disability of his back and temporary total disability due to injuries sustained in the employ of the City of Detroit Lakes in February 1972 and in the employ of Tri-State Heating Supply in September 1977. The compensation insurers discontinued payment of compensation for temporary total disability on June 7, 1982, on the ground that employee had refused suitable employment, although they voluntarily began payment at that time of temporary partial disability based on what employee could have earned at the offered job. His objection to the discontinuance and his claim for additional permanent partial disability resulted in the decision under review, in which a unanimous Workers' Compensation Court of Appeals (W.C.C.A.) determined that employee had a permanent partial disability of 30 percent, was temporarily totally disabled from August 2 to August 30, 1982, was temporarily partially disabled thereafter, and was entitled to compensation for his temporary partial disability at his rate for temporary total disability. In this court the employers and insurers challenge a finding that since his hospitalization in August 1982 employee has been unable to work because of his pain and because of his inability to find work within his physical limitations and the further finding that he has been temporarily partially disabled after September 1, 1982. They also contend that in any event he is not entitled to receive compensation for temporary partial disability at his rate for temporary total disability. We affirm.

■ The first challenged finding requires little discussion. Because of employee's own testimony that he could perform some work if he could find it, as well as the opinions of two of the three medical witnesses that he is capable of working subject to restrictions against lifting more than 25 pounds, twisting, bending over, and prolonged sitting, we do not discern sufficient evidence to support a determination that employee's pain prevents him from working. However, the balance of the finding—that since September 1, 1982, he has been unable to work because of his inability to find work within his physical limitations—has ample evidentiary support.

■ The same is true of the finding that employee has been temporarily partially disabled since September 1, 1982. The record establishes that employee has made diligent efforts to find work in the period following his second injury, other than during times of total disability following laminectomies performed in March 1979 and August 1980. He obtained only a truck-driving job for a 3-day period in July 1982, during which he worked 10-to 12-hour days and earned $182. Because his weekly wage at the time of the 1977 injury was $186, relators argue that his July 1982 earnings prove he sustained no decrease in earning capacity. We do not agree. While post-injury earnings are generally presumed to be evidence of earning capacity, the W.C.C.A. could reasonably have concluded that these earnings were not representative of employee's earning capacity in light of the fact that this was the only job he had obtained in a diligent search extending over several years.

■ Relators insist also that the determination that employee had no earning capacity following September 1, 1982, was erroneous because in May 1982 he had been offered, and had refused, a job within his physical limitations at which he would have earned $150 a week. The evidence establishes that this job had been tailored to fit those limitations through the efforts of a qualified rehabilitation consultant and that one of the insurers had agreed to pay the offered wage during the first month of employment. Those facts, which were not present in *French v. Minnesota Cash Register*, 341 N.W.2d 290 (Minn.1983), permit the inferences that the duration of the offered job was uncertain and that similar work was not likely to be available elsewhere. Thus, the W.C.C.A. was not required to accept the offered wage as representative of employee's earning capacity

after September 1, 1982. *Mitchell v. White Castle Systems, Inc.*, 290 N.W.2d 753 (Minn.1980). It concluded instead, based on employee's testimony about his continuing diligent but unsuccessful efforts to find employment, that he had proved total absence of earning ability after that date. Unless employee's earlier refusal of suitable work precludes an award of such benefits, payment of compensation to employee at his temporarily total disability rate was authorized by Minn.Stat. § 176.101, subd. 2 (1982).[1]

 Nevertheless, the employers and insurers do urge that employee's refusal of the job offered him should bar him from receiving further benefits at the temporary total disability rate. They argue that the Workers' Compensation Act aims to return partially disabled employees to productive employment as soon as possible and that employee had the duty of attempting the offered work. We do not disagree. However, while one aim of the statute is to return injured workers to employment, we have also recognized that the statute as a whole "clearly expresses the legislative intent and purpose of providing continuing income to a disabled worker." *Harrison v. Schafer Const. Co.*, 257 N.W.2d 336, 338 (Minn.1977). That being true, we cannot agree that the legislature intended that a refusal of appropriate employment under all circumstances would permanently bar a partially disabled employee from receiving benefits to which he would otherwise be entitled. We refused so to hold in *French.* Because, following his initial refusal, this employee made a good-faith attempt to accept the job offer within a reasonable time after its making, continued his diligent efforts to find work within the physical limitations resulting from his work-related in-

juries, and was properly found to have had no ability to earn after September 1, 1982, we hold that employee was entitled to compensation for temporary partial disability at his temporary total disability rate after that date. *Cf. Liberty Mutual Ins. Co. v. Neal*, 140 Ga.App. 585, 231 S.E.2d 574 (1976); *Morrison v. Merrick's Super Market, Inc.*, 300 Minn. 535, 220 N.W.2d 344 (1974).

Employee is awarded attorney fees of $400.

Affirmed.

---

1. Minn.Stat. § 176.101, subd. 2 (1982) provides:
   In all cases of temporary partial disability the compensation shall be 66⅔ percent of the difference between the daily wage of the worker at the time of injury and the wage he is able to earn in his partially disabled condition. This compensation shall be paid during the period of disability, payment to be made at the intervals when the wage was payable, as nearly as may be, and subject to a maxi-

mum compensation equal to the statewide average weekly wage. If the employer does not furnish the worker with work which he can do in his temporary partially disabled condition and he is unable to procure such work with another employer, after reasonably diligent effort, the employee shall be paid at the full compensation rate for his or her temporary total disability.