Wenzel KOENIG, Respondent,

v.

**NORTHERN INSULATION COMPANY and AID Insurance Services, Relators,**

and

**Minnesota Department of Public Welfare, Intervenor-Respondent.**

No. C9–84–720.

Supreme Court of Minnesota.

Dec. 7, 1984.

---

Michael J. Koshmrl, Minneapolis, for relators.

John W. Carey, Fairfax, for respondent.

PETERSON, Justice.

Employer and insurer seek review of a decision of the Workers' Compensation Court of Appeals affirming the compensation judge's award to employee of continuing temporary total disability compensation from December 5, 1982, and medical expenses incurred to treat aggravation of an ulcer, allegedly secondary to a work-related back injury employee suffered on October 28, 1980. We affirm the determination that employee is entitled to continuing disability benefits but reverse the determination that the expenses for treatment of his ulcer are compensable.

Employee was unable to do any work for several months following the back injury, diagnosed by his treating doctor, Dr. H.G. Miller, as a herniated lumbar disc. The injury resulted in a 15 percent permanent partial disability of the back that prevents employee from returning to his former work as an insulator. In March 1981 Dr. Miller released him for light work with restrictions against lifting more than 20 pounds, bending, twisting, stooping, and prolonged sitting, standing, or walking. Employee did not obtain work within those restrictions, and in July 1981 the insurer furnished him the assistance of a qualified rehabilitation consultant, Kathryn Schrot. Sometime in 1982 the insurer also hired another rehabilitation placement expert to help employee find work within his restrictions. Employee cooperated wholeheartedly with all requirements of the rehabilitation consultants, spending many hours a week contacting employers and preparing reports about his job search. In spite of those efforts and the efforts of the rehabil-

itation consultants, employee obtained only one job and was forced to leave it a few weeks later because he developed intense back pain when he was switched to work requiring constant standing and bending. By September 1981 employee was hypertensive and had a bleeding ulcer that required medical attention. Except for the few weeks of his employment, employee continued to receive temporary total disability compensation.

In November 1982 the insurer informed Ms. Schrot that employer might have a job within employee's work restrictions. She telephoned John Johnson, employer's president, and was told that he had a light maintenance position in employer's insulation plant for 4 hours a day. Johnson described the job generally, saying employee would do some sweeping in the plant, pick up papers in the yard, and do some general cleaning, but would not be required to lift. Ms. Schrot said that Johnson's "main concern" was that "looking at his expenses it would be to his benefit to offer a job to [employee] if he had one available." She conceded that she did not acquire sufficient information about the job to visualize what physical activity it would require.

Johnson's version of his conversation with Ms. Schrot differed somewhat from hers. He said he had told her that employee would push a broom in the factory and would place paper in a receptacle in the factory yard and that neither duty would require lifting more than a pound or two. He said also that he told her the work would take from 4 to 8 hours a day.

Without further investigation Ms. Schrot told employee to make an appointment with Johnson, obtain specific information about the job duties, and then contact her. Employee expressed reluctance and said he thought he was being "set up." However, he complied with the request and met Johnson on December 3, 1982.

Both men agreed that the meeting was short, but expressed conflicting versions of what transpired. Employee said that he was told he "would work from 7:00 to 7:00,

five days a week, pushing a broom up at the mill," to which he replied that he could not work days of that length and was suffering from a bleeding ulcer. Johnson said that he told employee that the factory shift ran from 7:00 to 7:00 and that employee should report to work at 7:00 a.m. the following Monday, December 6, 1982, "so that we could work out whatever he was going to be doing and how he could do it." Employee had a prearranged appointment with Dr. Miller on that date and said he told Johnson of the appointment.

On December 6 employee kept the medical appointment and then told Dr. Miller that he had been offered a 12-hour-a-day janitorial job. Dr. Miller advised employee not to attempt such work. On the same day, after telephoning employee's wife to ask why he had not come to work, Johnson informed the insurer's agent by letter that employee had not appeared for the offered job, which he then described as "janitor work cleaning the plant office, lunchroom, warehouse, and manufacturing area as well as the grounds around the plant."

On December 9, 1982, the insurer filed a notice of discontinuance, stating therein that employee had been offered and had refused a job within his restrictions. On January 3, 1983, Johnson brought Ms. Schrot to the plant and demonstrated the activity required to sweep and pick up paper. On January 13, 1983, Dr. Gene Swanson examined employee adversely. This doctor testified that he obtained no objective findings and expressed the opinion that employee could perform the paper pickup and sweeping and could also do light cleaning, even for a 12-hour shift. Dr. Miller agreed that employee probably could perform such work for an 8-hour day but said he did not think employee capable of the 12-hour-a-day job employee said he had been offered.

The compensation judge and the Workers' Compensation Court of Appeals panel reviewing the judge's decision found that the notice of discontinuance had shown neither employee's medical status on the date of the discontinuance nor the specific na-

ture of the job offered. They found also that the notice appeared to be a pretext for terminating employee's compensation and was of no effect. Underlying this finding was the determination that employer had not made a good-faith offer of suitable employment and thus that employee's refusal of the offer did not terminate his right to receive temporary total disability. In this court employer and the insurer insist that there is no evidentiary support for that determination and that, instead, the evidence proves that employer made, and employee unreasonably refused, a good-faith offer of work employee is physically capable of performing. Our concern, however, is with whether there is substantial evidence in the record as submitted to support the determination that employer did not make a good-faith offer of suitable employment.

■ We are compelled to agree with the Workers' Compensation Court of Appeals panel that there is such evidence. It includes employee's testimony that he was told to report for a 12-hour shift of sweeping in spite of Dr. Miller's restrictions against prolonged standing and walking. It includes also the admissions of Ms. Schrot that the offer gave her so little information that she was unable to visualize the activities which would be required of employee and thus could not know whether the job offer was suitable, and her testimony that Johnson's "main concern" was the length of time employer had been paying compensation. It includes Johnson's own testimony that he had told employee to report the following Monday so that they could determine what work he would do and how it was to be done. All of that evidence supports the determination that employer did not in fact make a good-faith offer of a job within employee's medical restrictions, while the evidence assem-

bled after employee's refusal of the job—the specific job description given the insurer's agent, the demonstration to Ms. Schrot of the physical requirements of the job, the examination of employee by Dr. Swanson and his opinion that employee could perform the job as demonstrated, and even Johnson's testimony that he had had another possible job in mind for employee, although he had not communicated that fact to employee—is irrelevant to the question whether employer actually made a good-faith offer of work that employee was capable of performing. The determination that employee did not receive such an offer must be affirmed.[1]

■ Our review of the record requires us, however, to reverse the finding that aggravation to employee's ulcer was "secondary to the effects of employee's personal injury and the handling of employee's compensation rights and benefits" and was therefore causally related to his compensable back injury. Dr. Miller, the only medical witness testifying about employee's ulcer, expressed the opinion it had developed or had been aggravated because of stress employee experienced in his intensive job search and his other efforts to comply with the directives of the placement specialists. Dr. Miller did not say that the ulcer condition was caused by the back injury or aggravated by it, so the finding that the aggravation was secondary to the effects of the back injury has no support. That being true, the real issue is whether the coverage of the Workers' Compensation Act extends to aggravation of the ulcer by stress related to the job placement efforts. We have concluded that the statute requires the determination that this condition is not a compensable injury because it did not arise out of and in the course of employment.[2] *Cf. Schander v. Northern*

1. We do not suggest that an employer's desire to reduce compensation costs is of itself determinative of whether a valid job offer was made. Minn.Stat. § 176.101, subd. 2 (1982) clearly encourages employers to offer, and partially disabled employees to accept, suitable work. Thus, the statute appears to reflect legislative

judgment that offering such work is in the best interests of both employees and employers.

2. While this court has held that subsequent injuries which are a direct and natural consequence of a compensable injury are also compensable, *Rohr v. Knutson Construction Co.*, 305 Minn. 26, 232 N.W.2d 233 (1975), and that injuries sus-

*States Power Co.*, 320 N.W.2d 84 (Minn. 1982) (holding that an employee who was injured while returning home from a retraining course could not recover compensation for the resulting disability because he was not in the course of employment); *Hendrickson v. George Madsen Construction Co.*, 281 N.W.2d 672 (Minn.1979) (holding that an employee's heart attack sustained while testifying at a hearing on his compensation claim was not work-related).

Employee is awarded attorney fees of $400.

Affirmed in part and reversed in part.

tained by an injured employee while traveling to or from medical treatment for a compensable injury are also compensable, *Pedersen v. Maple Island, Inc.*, 256 Minn. 21, 97 N.W.2d 285 (1959);

*Fitzgibbons v. Clarke*, 205 Minn. 235, 285 N.W. 528 (1939), those decisions are not applicable here.