Elizabeth SHOGREN, Relator,

v.

BETHESDA LUTHERAN MEDICAL CENTER and Insurance Company of North America, Minnesota Department of Employment Security, Respondents.

No. C9–83–1887.

Supreme Court of Minnesota.

Dec. 21, 1984.

596

Russell G. Sundquist, St. Paul, for relator.

Cynthia K. Nyman, Minneapolis, Laura Mattson, Minn. Dept. of Economic Sec., St. Paul, for respondents.

WAHL, Justice.

Employee seeks review of a decision of the Workers' Compensation Court of Appeals denying her claim for temporary total disability benefits based on the finding of that court that she unreasonably refused her employer's offer of a job within her physician's restriction against lifting more than 30 pounds. The compensation judge had determined that her refusal was not unreasonable, that she had made a reasonably diligent but unsuccessful effort to find employment after being discharged on March 15, 1982, by the employer, and that she thus had suffered temporary total disability since that date. Having determined that there is substantial evidence in the record as submitted to support the compensation judge's findings and decision, we reverse and remand for reinstatement of that decision.

It is undisputed that employee, a staff nurse at the employer hospital, suffered a compensable low back injury on August 3, 1980, while lifting a patient, and sustained intermittent temporary total disability until February 8, 1982. At that point Dr. Paul Schanfield, an orthopedic surgeon, released her to return to work with a restriction of indefinite length against lifting more than 30 pounds.

As a staff nurse, employee had "floated," working on various floors of the hospital. When she returned to work on February 8, 1982, the administrators assigned her duty within her lifting restriction. On March 5, 1982, however, Mary Femrite, the nursing administrator, and Martin Paul, an administrator in charge of patient care, informed employee that she could not continue as a staff nurse because of the lifting restriction. They offered her a position as a discharge analysis clerk, a sedentary job in which she would review and file medical records, act as a receptionist, type, operate a microfilm reader/printer, and use a calculator. High school graduates are capable of performing the job. Employee testified that she was astonished to hear that she could not continue as a staff nurse because she knew of two nurses who were doing such work in spite of permanent lifting restrictions. She told the administrators that she could not type, but asked for a written job offer. It was furnished on March 11, 1982, and in addition to describing her duties informed her that the job would begin on Monday, March 16, that she would receive the wage she had been earning when injured in 1980, and that she would be required to work from 3:30 p.m. to 11 p.m., Tuesdays, Wednesdays, and Fridays, and to work weekends and most holidays from 8 a.m. to 4 p.m. As a staff nurse employee had worked from 7 a.m. to 3:30 p.m. and had not worked weekends.

Employee consulted an attorney at the Department of Labor and Industry on March 12 and was told that her employer was required to offer her rehabilitation services. On the attorney's advice employee refused the offered job, informing the hospital that the position was not commensurate with her skills, education, abilities, and interests, and did not offer the opportunity for future income and benefits that a staff nurse position did. The hospital placed her on a leave of absence on March 16, 1982, and did not permit her to work as a staff nurse.

Employee embarked then on a job search and also sought temporary total disability benefits. The hospital resisted her claim on the ground that she had refused a suitable job offer.[1] At the compensation hearing employee presented evidence of many attempts to obtain employment, both in her field and in sales and cashier positions, through telephone contacts, in-person applications, and letters and resumes. Shortly before the compensation hearing in May 1983, the hospital offered employee a part-time position as a ward secretary, a job which required typing and medium lifting. Employee refused this job also.

Employee testified that she had several objections to the discharge analysis clerk position offered her in March 1982: she could not utilize her education, skills, and experience in that work, had no interest in it, and lacked skills the job required. The hours would have meant that she would have little time with her family and could not pursue advanced educational courses and community activities in which she had been involved. When the offer was made, she was not given time to consult her doctors, who were then out of town. The job was nonunion and she would have no protection against discharge, a matter of much concern to her because she had acted as union steward for several years and had been subjected by the hospital administrators during the preceding year to "a variety of coercions and counseling sessions" because of her union activities.

Employee felt also that her education and considerable experience "gave [the hos-

---

**1.** After several attempts to obtain rehabilitation services from the insurer, employee also filed a petition seeking rehabilitation benefits on August 26, 1982. At a subsequent administrative conference the hospital took the position that she was not entitled to rehabilitation services because the insurer had discontinued temporary total disability compensation. On November 24, 1982, a rehabilitation specialist found that employee was eligible for rehabilitation consultation under Minn.Stat. § 176.102 (1982). On the employer-insurer's appeal of this determination the Rehabilitation Review Panel unanimously agreed in a decision issued August 29, 1983, that employee was entitled to a QRC assignment. The file does not reveal whether she was ever furnished one.

pital] a lot to work with as far as accommodating to [the lifting] restriction." Her doctor expressed the opinion that with some help employee could continue to work as a nurse. Both administrators said, however, that it was not the hospital's custom to accommodate a long term lifting restriction and they had never done so during their employment. Ms. Femrite said also that, while some nursing positions would accommodate the restriction, employee was not qualified for all of them, none was available, and she had no authority to "bump" nurses in positions for which employee was qualified. Both administrators claimed that refusing to accommodate long term lifting restrictions promoted patients' safety.

The compensation judge decided that employee had acted reasonably in refusing the clerical, nonunion job offered her. The WCCA, apparently viewing her objections to the job as irrelevant, found that the offered position at the wage she was earning when injured was within her physical restrictions and, consequently, that she had unreasonably refused it. However, they were empowered to substitute their own finding for the compensation judge's determination only if the latter was unsupported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 176.421 (Supp.1983); *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984). That is not true in this case.

■ It is true that the employer has an opportunity under Minn.Stat. § 176.101, subd. 2 (1982), to "furnish the worker with work which he can do in his partially disabled condition," and that as a rule an employee who refuses a suitable job offer by the employer is not entitled to compensation for total disability. *Findorff v. Pinkerton's, Inc.*, 295 N.W.2d 373 (Minn. 1980); *Morrison v. Merrick's Super Market, Inc.*, 300 Minn. 535, 220 N.W.2d 344 (1974). But an employee's refusal of an offer of employment has not invariably barred him from receiving compensation at the temporary total disability rate. For example, in *Wesley v. City of Detroit*

*Lakes*, 344 N.W.2d 614 (Minn.1984), the employee's refusal of an offer of employment within his physical limitations was held not to bar him from later receiving compensation at his temporary total disability rate when he attempted in good faith to accept the offer within a reasonable time after its making and he continued to seek employment diligently. In *French v. Minnesota Cash Register*, 341 N.W.2d 290 (Minn.1983), the employee's refusal of a nonspecific offer of light work which he said was made when his shoulder was still very sore and which was kept open for only a week did not bar him from receiving compensation for temporary total disability. The same is true when an employer does not make a bona fide offer of employment. *Koenig v. Northern Insulation Co.*, 358 N.W.2d 644 (Minn.1984).

■ In this case the evidence could permit an inference that the clerical position was not offered in good faith. The hospital employs several hundred registered nurses. Because of employee's considerable experience, assigning her work within her lifting restriction would not seem difficult. Moreover, it seems unlikely that every nurse employed is physically capable of doing necessary lifting and repositioning of patients without assistance from orderlies or other personnel. Employee's testimony about the hospital's antagonism toward her as a union steward was uncontradicted. The job offered employee, although within her physical restrictions, did not interest employee at all, demanded skills that she did not have, and required her to accept totally different working hours. The position did not have prospects of future economic advancement equivalent to those offered by a nurse's position. Nor did the hospital offer employee a clerical job with the assurance that she would be transferred to a nursing position as soon as one within her restriction became available. All of these circumstances permit an inference that the administrators used the lifting restriction resulting from employee's work injury as a pretext to remove her from her position as a

nurse. Even if an inference of bad faith is not compelled, we are satisfied that this evidence strongly suggests the offered job was essentially a demotion from a professional status for which employee's education, skills, and experience qualified her. The total evidence furnishes substantial support for the compensation judge's determination that employee did not unreasonably refuse the offered position. We affirm that determination and hold that an employee cannot be disqualified from receiving temporary total disability benefits by her refusal of a job which, although within her physical restrictions, is one which unnecessarily deprives her of the opportunity to pursue her profession.[2]

We also hold that there is substantial evidentiary support for the determinations that employee made a reasonable and diligent effort to obtain employment and that she is entitled to continuing compensation at the temporary total disability rate to the time she succeeded in her effort.[3]

Employee is awarded attorney fees of $400.

Reversed and remanded for reinstatement of the compensation judge's decision.

---

2. We recognize that of itself the hours offered employee in the clerical job did not furnish sufficient reason for refusing the job. *See Findorff v. Pinkerton's, Inc.,* 295 N.W.2d 373 (Minn. 1980); *Hassenfeld Bros., Inc. v. Wolowicz,* 104 R.I. 620, 247 A.2d 834 (1968). Some courts have also held that an employee's objection that a job removes him from union protection does not afford him reason to refuse work offered by the employer. *See M. & M. Transp. Co. v. Della Posta,* 74 R.I. 514, 62 A.2d 654 (1948); *Hamlin v.*

*Michigan Seat Co.,* 112 Mich.App. 84, 314 N.W.2d 804 (1982). In neither of these cases was the worker an official of the union and an active participant in grievance proceedings, as employee was in this case.

3. The employer-insurer represent in their brief that employee became a negotiator for the Minnesota Nurses' Association in January 1984.