Edward SCOTT, Respondent,

v.

SOUTHVIEW CHEVROLET CO., et al., Relators,

National Casualty Co., intervenor, Respondent.

No. 47931.

Supreme Court of Minnesota.

June 16, 1978.

Fitch & Johnson, Minneapolis, for relator.

Jon R. Duckstad, St. Paul, for Scott.

Ralph E. Koenig, Minneapolis, for Nat. Casualty Co.

Heard before TODD, SCOTT, and GOD-FREY, JJ., and considered and decided by the court en banc.

TODD, Justice.

This is a workers' compensation case arising out of an employee's disabling illness. The compensation judge ruled that the employee suffered from an occupational disease and as a result continues to be temporarily totally disabled. The Workers' Compensation Court of Appeals affirmed the compensation judge. On review by certiorari, the relators argue that an expert opinion expressed at the compensation hearing was based on an inadequate hypothetical question, and that the finding of continuing temporary total disability is unsupported by the evidence. We affirm.

The employee, Edward Scott, is 65 years old and was employed until the time of his disabling illness as a used car attendant at Southview Chevrolet in Inver Grove Heights. His duties included starting the engine of each automobile on Southview's used car lot once every day. He also checked the cars' batteries, oil, and tires, and cleaned cars when necessary. The number of cars on the used car lot ranged from a low of about 80 to a high of 169. After starting a car, Scott would allow it to run only a few seconds. The car-starting procedure required approximately one hour and 20 minutes per day and was conducted every day unless it was extremely cold. It appears that when Scott entered a car to start its engine, his practice was to leave the car door open.

On Monday, December 8, 1975, Scott began his assigned tasks as usual. After starting three or four cars, however, he began to gasp for breath and was forced to

sit still in order to regain his breath. Scott went immediately home, but continued to experience shortness of breath. After seeing a doctor, he was admitted to Divine Redeemer Memorial Hospital on the afternoon of the same day. Medical records introduced at the compensation hearing indicate that on one occasion during the weekend immediately preceding his illness, Scott had experienced a sharp pain across the upper left portion of his chest. Scott was lying in bed at home at the time.

Scott's problem was diagnosed as a pneumothorax—a collapsed left lung. Although the lung puncture has healed, Scott continues to suffer from an obstructive lung disease in the nature of pulmonary emphysema. The healing process is described as extremely slow, and Scott's doctor has advised that he should not return to work. Since December 8, 1975, Scott has experienced three additional episodes of shortness of breath: one while walking with his wife, one while attempting to start a lawnmower, and one while sweeping the snow off his sidewalk.

Scott's job history indicates that he has been in contact with automobile exhaust fumes on a regular basis for quite some time. From 1953 until 1968, he parked cars at the DeLoop parking ramp in St. Paul. Scott first became a used car attendant in 1968 and was employed by the 880 Car Lot. He remained on that job for only 2 months, switching to Roster Pontiac later in 1968. Scott worked for Roster until early 1969, when he became the used car attendant at Southview. Thus, when his illness occurred, Scott's work had been associated with automobiles for some 22 years. Other factors which would appear to have affected his respiratory system include a bout with pneumonia as a child, and a period of cigarette smoking (4–30 cigarettes per week), which ended 30 years ago.

At the compensation hearing, Scott called two expert witnesses. The first was Dr. Coleman Connolly, the thoracic specialist who had been primarily responsible for Scott's treatment. In response to a hypothetical question, the doctor opined that the characteristics of Scott's employment "had quite a bit to do with his lung disease," and were a substantial causative factor.[1] Scott also called Arval Christiansen of the Minnesota Department of Employment Services an employment expert. Christiansen testified that because of Scott's age, poor health, and lack of training, Scott was completely unemployable and would never be able to locate a job.

The compensation judge ruled that Scott suffered from an occupational disease and continued to be temporarily totally disabled. The Workers' Compensation Court of Appeals affirmed. The employer, Southview Chevrolet, and its workers' compensation insurer, Aetna Insurance Company, petitioned for certiorari. The issues raised are:

(1) Was the hypothetical question posed by Scott's counsel inadequate to establish the causal link between the employee's occupation and his illness?

(2) Does the evidence support the finding that Scott continues to be temporarily totally disabled?

1. The compensation judge found that Scott's exposure to exhaust fumes at work "has produced an occupational disease in the nature of pulmonary emphysema involving [Scott's] lungs." Of course, a disease cannot be occupational unless it is somehow related to the peculiar working conditions of the employee who contracted the disease. Minn.St. 176.011, subd. 15, recognizes the need for this causal connection as follows:

" 'Occupational disease' means a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment and shall include undulant fever. * * * *A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed and if the occupational disease*

1. Dr. Connolly's opinion was flatly contradicted by relators' expert, Dr. Malcolm Blumenthal.

*follows as a natural incident* of the work as a result of the exposure occasioned by the nature of the employment. *An employer is not liable for compensation for any occupational disease which cannot be traced to the employment as a direct and proximate cause* and is not recognized as a hazard characteristic of and peculiar to the trade, occupation, process, or employment or which results from a hazard to which the worker would have been equally exposed outside of the employment. * * * " (Italics supplied.)

■ At the compensation hearing, Scott relied on the testimony of Dr. Connolly to establish the requisite link. As previously stated, Connolly was of the opinion that there was a substantial relationship between Scott's illness and the conditions of his employment. Although Dr. Connolly, as the treating physician, had extensive personal familiarity with Scott's condition, counsel utilized a hypothetical question to elicit the doctor's opinion. It is well established that expert opinion may be based on (1) personal knowledge of the case, (2) testimony heard during the trial, or (3) facts in evidence presented in the form of a hypothetical question. *Wilson v. Sorge,* 256 Minn. 125, 97 N.W.2d 477 (1959); *Independent School Dist. No. 35 v. A. Hedenberg & Co. Inc.,* 214 Minn. 82, 7 N.W.2d 511 (1943); 7A Dunnell, Dig. (3 ed.) §§ 3337 to 3339.

■ Relators argue, however, that Dr. Connolly's opinion should have been rejected by the compensation judge because it was based on a hypothetical question which allegedly omitted material facts. We find it unnecessary to detail the asserted omissions for several reasons. First, facts of minor significance may be omitted from a hypothetical question. The critical inquiry is whether the omission will have the effect of misleading the finder of fact. See, *Aasen v. Aasen,* 228 Minn. 1, 36 N.W.2d 27 (1949); McCormick, Evidence (2 ed.) § 14. Second, minor omissions from a hypothetical can often be addressed and corrected on

cross-examination. Our review of the record persuades us that each omission complained of was either wholly irrelevant to the doctor's opinion or else was the subject of extensive cross-examination by opposing counsel.

Third, apart from the structure of the hypothetical question, any uncertainty in Dr. Connolly's testimony was fully aired by the compensation judge himself. Judge Walsh asked the doctor point blank whether he believed Scott's exposure to exhaust fumes to have been a substantial factor in causing Scott's lung problem. The doctor stated that exhaust was one of several important concurrent factors, but he declined to specify the contributing role of exhaust fumes in terms of a percentage. In short, the court's own examination, covering several pages of transcript, was easily sufficient to remedy any deficiencies in the hypothetical question.

2. Relators also urge that the finding of Scott's continuing total disability is not sustained by the evidence. It is not disputed that Scott's expert witness, Mr. Christiansen, was fully qualified, and maintained under intensive cross-examination that no employment would ever be available to Scott.[2] The basis of relator's contention, however, is that no one has even attempted to find work for Scott. Neither Scott nor the employment expert made any effort to actually peruse the job market for available, nonexertive employment. Relators urge that absent at least an attempt to locate suitable employment, it was improper for the compensation judge to rule that Scott continues to be totally disabled.

■ We disagree. There is no requirement in the statute or elsewhere which imposes on an injured employee the obligation to affirmatively seek and be denied employment as a prerequisite to being found totally disabled. Rather, the fact that a compensation claimant has not sought post-injury employment goes only to

---

2. Dr. Connolly had already testified that Scott should not return to his position at Southview Chevrolet.

the evidentiary weight of the assertion that he is totally disabled. This court has on several occasions affirmed total disability awards in spite of the fact that an injured employee had made no effort to secure new employment. See, *Murphy v. City of Rochester,* Minn., 250 N.W.2d 845 (1977); *Webster v. Lull Engineering,* 309 Minn. 223, 243 N.W.2d 736 (1976); *Reese v. Preston Marketing Assn.,* 274 Minn. 150, 142 N.W.2d 721 (1966); *Castle v. City of Stillwater,* 235 Minn. 502, 51 N.W.2d 370 (1952); *Lee v. Minneapolis St. Ry. Co.,* 230 Minn. 315, 41 N.W.2d 433 (1950).

■ In addition, even if it could be demonstrated that Scott was capable of doing some unskilled light work, that fact would not bar a finding of total disability. In *Lee v. Minneapolis St. Ry. Co.,* 230 Minn. 320, 41 N.W.2d 436, this court said:

> "* * * An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled."

This language was expressly reaffirmed in *Mastellar v. Nelson Co-op. Creamery,* 299 Minn. 210, 216 N.W.2d 836 (1974), and this principle has been applied on numerous occasions. See, e. g., *Webster v. Lull Engineering, supra; Brooks v. Harris Bros. Plumbing Co.,* 307 Minn. 480, 238 N.W.2d 212 (1976); *Reese v. Preston Marketing Assn., supra; Petter v. K. W. McKee, Inc.,* 270 Minn. 362, 133 N.W.2d 638 (1965); *Castle v. City of Stillwater, supra.* In the present case, then, the employment expert's testimony that no work of any kind was available to Scott provided evidentiary support in excess of what this court has traditionally required for a finding of total disability. We conclude that the ruling of the compensation judge was adequately supported by the evidence.

■ 3. In his brief and at oral argument, counsel for relators urged this court to exercise its original jurisdiction in order to correct the errors alleged to have occurred below. Just what is meant by this admonition is not entirely clear. It appears, however, that we are being invited to ignore the findings of the workers' compensation tribunals and substitute our own judgment in what would amount to a trial de novo without live testimony.

It is true that Minn.St. 176.481 provides in part:

> "On review upon certiorari under this chapter, the supreme court has original jurisdiction."

Lest we be misunderstood, however, we reaffirm our interpretation of this statutory language as set forth in *Larson v. Le Mere,* 220 Minn. 25, 28, 18 N.W.2d 696, 699 (1945):

> "* * * The word *original* in the above statute did not and could not enlarge the jurisdiction of this court beyond its appellate jurisdiction (and such original jurisdiction in *remedial* cases as prescribed by law) conferred and limited by Minn.Const. art. 6, § 2. *Lading v. City of Duluth,* 153 Minn. 464, 190 N.W. 981. The word, however, is not without meaning. In using the word *original,* the legislature obviously intended to emphasize that this court should have jurisdiction to review the entire proceedings below from their very origin or inception as to any issue raised by an assignment of error, and this jurisdiction so conferred necessarily extended to any adverse party or parties involved in the adjudication of such issue at any stage of the proceedings."

Accordingly, the scope of our review in these matters will remain unchanged. See, *Grgurich v. Sears, Roebuck & Co.,* 301 Minn. 291, 296, 223 N.W.2d 120, 122 (1974); 21 Dunnell, Dig. (3 ed.) § 10426(14).

The decision of the Workers' Compensation Court of Appeals is affirmed.

Affirmed.