Louis E. SMITH, Respondent,

v.

**ARMOUR AND COMPANY, Relator.**

No. 81–283.

Supreme Court of Minnesota.

March 26, 1982.

Mahoney, Dougherty & Mahoney and Patrick J. Sauter, Minneapolis, for relator.

Sween & Salazar, Harlan G. Sween and Keith D. Simmons, Minnetonka, for respondent.

WAHL, Justice.

Certiorari on the relation of Armour and Company to review a decision of the Workers' Compensation Court of Appeals awarding Louis E. Smith compensation for permanent total disability from January 1, 1974, and for permanent partial disabilities of his back and arm. We affirm in part and reverse in part.

From 1948 until February 1, 1973, employee repaired and maintained equipment used in the beef kill division of relator's South St. Paul plant. The work was physically demanding, requiring employee to lift heavy equipment, to bend, to climb, and to use large tools. On September 5, 1958, he sustained injury to his low back and right elbow in a fall in the course of his employment. He was hospitalized 10 days, during which osteomyelitis developed in his elbow. The wound was drained and had healed over by the time he returned to work several weeks later, but employee said that neither his elbow nor his back ever returned to its former condition.

In October 1965, July 1969, and March 1971, employee again sustained injuries involving his low back in accidents arising out of and in the course of his employment. Each injury caused a relatively short period of total disability, but employee said that with each one his back became more sore and he was less able to do the lifting required in his work. Following the last two injuries, he also had numbness and pain in his right leg which required him to sit for short periods during the day. A mechanic's assistant who had been assigned to help employee after his first 3 years of work helped employee greatly by carrying and lifting heavy tools and equipment.

On October 4, 1971, employee's back "gave out" when he bent over at his home. He was disabled and did not return to work until the following October or November. In April 1972, Dr. Clyde Warner performed a laminectomy which did not improve employee's condition significantly. When he returned to work, he was required to wear a back brace which prevented him from bending and was also restricted by Dr. Warner from lifting more than 50 pounds. By this time employee said he "could no longer do my fair share of my work" and simply did what he could do.

On February 1, 1973, relator closed its beef kill division in its South St. Paul plant. It offered employees in that division several options: Separation pay, transfer to another plant, an intraplant transfer to another section of the South St. Paul plant, and early retirement with a pension augmented until the recipient was eligible for social security. Relator's personnel director testified that he explained the options to each affected worker, although employee did not recall any discussion. He testified that it was his understanding that he could not transfer to another plant because of his age (56) and that he did not opt for an intraplant transfer because he did not know of any job in the entire plant which did not requiring bending, lifting, or constant standing. The shutdown eliminated the position in which he could have an assistant, and employee accepted the retirement and pension option because, he testified, he could no longer do his work.

Following this decision, employee obtained a job doing light factory work. He quit after 3 months because he could not tolerate the stooping and occasional lifting required in that work. He has not attempted to obtain other work and testified that since the late summer of 1973 he has had con-

stant back pain which increases if he sits or stands more than half an hour. The pain forces him to lie down several times each day.

On Christmas Day 1973, employee's osteomyelitis suddenly flared up and his elbow became inflamed. He was hospitalized, and in January 1974 Dr. Warner performed surgery twice to excise dead bone and infected tissue from the elbow. Because of the surgery, employee's arm is now bent at a 30° angle and he has limited motion in it. He said that it aches constantly and sometimes becomes numb.

In this compensation proceeding, initiated in June 1979, employee sought benefits for permanent total disability, a 25% permanent partial disability of the back, and a 30% permanent partial disability of the right arm. Dr. Francis Trost, a board-certified orthopedic surgeon, expressed the opinion that employee has sustained the alleged permanent partial disabilities of 25% of the spine and 30% of the right arm; that all of the work accidents contributed materially to employee's back disability; and that the injury in 1958 contributed materially in his arm disability. Dr. Trost said that employee could not tolerate prolonged sitting or standing, bending, lifting, or stooping, and could not do work requiring constant use of his right arm. He said also that although employee might be able to perform some type of work not involving physical labor, he would be required to rest at intervals during the work day. Dr. Michael Davis, also an orthopedic surgeon, ascertained employee's permanent partial disabilities as 15% of the spine and 20% of the arm; agreed that the disabilities were causally related to employee's work injuries; and placed similar restrictions on the type of work he could do. Although he had not examined employee in 1973, he expressed the opinion that at that time employee could have performed work not requiring repeated bending, lifting more than 20 or 25 pounds, or vigorous use of his right arm. Dr. Warner agreed with Dr. Davis' assessment of employee's permanent partial disabilities.

The compensation judge, with whom a unanimous Court of Appeals agreed, determined that employee had sustained a 20% permanent partial disability to his back and a 30% permanent partial disability to his right arm and awarded him compensation therefor. The compensation judge found also that employee had "elected to take early retirement" on February 1, 1973. The Court of Appeals rejected that finding and found instead that employee "was forced to take an involuntary retirement when his job, of 25 years, was eliminated." That court also determined that employee has been permanently and totally disabled since January 1, 1974, and awarded him compensation for such disability.

 In this court relator challenges the findings that employee did not voluntarily retire and that he has been totally disabled since January 1, 1974, as without evidentiary support. We have repeatedly stated that the Court of Appeals' findings will be reversed only if they are either manifestly contrary to the evidence or if consideration of the evidence and reasonable inferences permissible therefrom requires reasonable minds to adopt a contrary conclusion. *Alexander v. Kenneth R. LaLonde Enterprises,* 288 N.W.2d 18 (Minn.1980); *Kahn v. State,* 289 N.W.2d 737 (Minn.1980). Application of those standards here requires affirmance of both findings. There is ample evidence to support the finding that employee was in fact forced to retire because the job which he was attempting to perform, with the aid of an assistant, was eliminated and his physical disabilities prevented him from performing other work offered by relator. With respect to the finding concerning employee's permanent and total disability, we reject relator's contention that employee's evidence at the hearing in 1980 did not establish his condition prior to that date. The finding that employee was permanently and totally disabled as of January 1, 1974, has support in his uncontradicted testimony that his back condition has been approximately the same since the late summer of 1973 and in the evidence of the significant disability resulting from the condition of employee's elbow in December 1973. The evidence of his physical disabilities, in light of employee's

age, education (completion of eighth grade), and work experience only in physically demanding maintenance and mechanical work, furnishes adequate support for the finding of permanent and total disability.

We cannot, however, affirm the compensation award in its entirety. All of employee's injuries were sustained prior to August 1, 1974.[1] Payment for disabilities, of whatever nature, sustained by an employee prior to that date represents compensation for impairment of earning capacity; consequently, the employee cannot concurrently receive compensation for permanent total and permanent partial disability. *Boquist v. Dayton-Hudson Corp.*, 297 Minn. 14, 209 N.W.2d 783 (1973). Thus, the award for permanent partial disability of employee's arm cannot be sustained because it is clear that whatever part of that disability existed prior to January 1, 1974, the date on which employee was found to be totally disabled, is not determinable. The rating made by the medical witnesses reflected employee's disability subsequent to the flareup in December 1973 and the surgeries necessitated by it in January 1974. Since the award thus would be payable concurrently with the compensation for permanent and total disability, it is reversed.

The award made for employee's permanent partial disability of the back stands on a different footing. Based on the medical evidence, the compensation judge found that employee sustained a 20% permanent partial disability to his back, scheduled as 70 weeks of benefits,[2] by reason of the cumulative effects of his work injuries and the surgery in April 1972, which he also found to have been required because of those injuries. Accepting employee's return to work in October or November 1973 as the time at which this disability was ascertainable, the award covers a period of time which, as in *Bertsch v. Varnum Lumber & Fuel Co.*, 303 Minn. 545, 228 N.W.2d 228 (1975), ended well before employee's permanent and total disability began. The award for such permanent partial disability is therefore affirmed.

Employee is awarded attorneys fees of $400.

Affirmed in part, reversed in part.

1. August 1, 1974, is the effective date of the Act of April 12, 1974, c. 486, § 1, 1974 Minn. Laws 1231, which amended Minn.Stat. § 176.021, subd. 3 (1973 Supp.). *See Morehouse v.* *Geo. A. Hormel & Co.*, 313 N.W.2d 8 (Minn. 1981); *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909 (Minn.1979).

2. *See* Minn.Stat. § 176.101, subd. 3(40) (1971).