**George A. ROGDE, Respondent,**

v.

**UNITED VAN BUS DELIVERY, Relators.**

No. C7–82–730.

Supreme Court of Minnesota.

March 11, 1983.

Jardine, Logan & O'Brien, and Gerald M. Linnihan, St. Paul, for relators.

Mitchel I. Kirshbaum, Minneapolis, for respondent.

OTIS, Justice.*

This appeal raises only the issue of an employee's right to temporary total disability compensation for a period of approximately 50 weeks. The facts, which are not in dispute, were found by the Workers' Compensation Court of Appeals to support the employee's claim. We reverse.

On August 21, 1979, respondent George Rogde was employed as a truck driver by relator United Van Bus Delivery. He suffered a work related injury to his back, leaving him with what is conceded to be a 10% permanent partial disability.

The relator's insurer discontinued payments for temporary total disability on November 26, 1979, on the grounds that thereafter Rogde was capable of, and did in fact, perform limited services for a period of time as a truck driver, but refused rehabilitation, and declined to diligently seek gainful employment.

In granting benefits up to October 1, 1980, the compensation judge noted that the record shows a clear and long pattern of alcoholism. Rogde declines to recognize the need for treatment. The judge also stated that respondent made no effort to find work other than perfunctory attempts required by a form provided for welfare benefit applicants. He did not seek re-employment from his employer after being terminated for failing to report the revocation of his driver's license resulting from a drunken driving conviction in December 1978.

In August 1980, respondent was sentenced to .60 days in the workhouse for alcohol related problems. The compensation judge found that respondent was able to work and did work eight hours a day at various times between February and May 1980. Benefits for these periods were deducted.

* Retired Justice acting pursuant to Minn.Stat. § 2.724, subd. 2 (1982).

Although respondent was 60 years old and had only a limited education, the judge found he was "not helpless. He has really sought no work. His drinking is a cloud over his ability to return to the employment of the employer."

Nevertheless, because the injury was found to significantly contribute to respondent's disability, and his employer terminated him, temporary total benefits were granted, notwithstanding medical testimony that he was capable of doing lifting up to 25 pounds.

With one judge dissenting, the court of appeals affirmed as to the relevant issues. In so doing, the majority opinion stated that respondent's drinking was a problem but did not interfere with his work performance. In view of the fact that his license had been revoked in December 1978 for driving under the influence, and that in August 1980 he was incarcerated for the same offense, this finding is clearly erroneous.

The appeals court majority held that respondent made no attempt to regain his driver's license, nor any diligent effort to find employment. The granting of benefits from November 26, 1979 to February 15, 1981, however, was sustained.

The dissenting judge was of the view that respondent's failure to diligently seek employment, although he had demonstrated an ability to do light work, together with his failure to secure the reinstatement of his driver's license disqualified him from benefits under Minn.Stat. § 176.101, subd. 2 (1982). That statute confers benefits only if an injury "totally incapacitates the employee from working at an occupation which brings him an income." Minn.Stat. § 176.101, subd. 5 (1982).

We hold that respondent has not sustained his burden of proving he was totally incapacitated from gainful employment from and after November 26, 1979. The undisputed evidence discloses that he was an alcoholic who has refused to undergo treatment; that his chemical dependency has resulted in his losing his license as a truck driver; that he concealed that fact from his employer; that he has neither sought reinstatement of his license nor has he sought any employment he is capable of performing; and that he has been fully compensated for the 10% permanent partial work related injury to his back.

Accordingly, we hold that the record does not support a continuance of benefits after November 26, 1979, and we reverse.

Reversed.

YETKA, J., took no part in the consideration or decision of this case.

TODD, Justice (dissenting).

I respectfully dissent. My review of the record convinces me that it discloses substantial evidentiary support for the finding that as a result of his work-related injury employee has continued to be temporarily totally disabled since November 26, 1979, when relators discontinued payment of compensation to him. This finding justifies the award of continuing temporary total disability benefits from that time (with the exception of intermittent periods of employment between February and June 1980 and a 60-day period of incarceration beginning in August 1980).[1]

Employee, a 59-year-old truckdriver, sustained injury to his back on August 21, 1979, while unloading a refrigerator from his truck at a stop in Wisconsin. The employer-insurer paid him medical expenses and temporary total disability benefits until November 25, 1979, then discontinued benefits after receiving the opinion of Dr. David Johnson that employee could lift as much as

---

1. The majority's statement that this matter involves employee's right to temporary total disability compensation for a period of approximately 50 weeks evidently stems from a misreading of the decision under review. Employee was awarded such compensation from November 26, 1979, "through February 5, 1981 [the date of the compensation hearing] and continuing," except for the periods of employment and incarceration.

25 pounds and was capable of truck driving subject to that restriction.[2]

At the hearing employee testified that shortly after sustaining his injury he developed severe pain in his low back which radiated into his right thigh by the time he had returned to Minneapolis. After consulting his family doctor and a chiropractor, in November 1979 he went to Dr. George Osland, an orthopedic surgeon, who diagnosed lumbar disc syndrome and prescribed conservative treatment. On December 14, 1979, Dr. Osland advised employee that he could work subject to a lifting restriction of 40 pounds. The doctor testified that he was eager to see employee return to work "to lessen his time for drinking activities," and employee said also that he drank more when he was unable to work. He did not look for work immediately because, he said, he still was "really hurting really bad." At the time of the compensation hearing employee said that his back did not bother him if he remained inactive but that he developed pain in the same area and in his right leg if he lifted and if he sat or stood for more than a short period. Employee did perform light work for 10 days in February 1980 and for short periods from April to June 1980 for Circle Cement Company, a former employer. At that point the cement company no longer had light work. Both employee and Thomas Deiley, the owner of the company, testified that during his work employee would develop back pain and sometimes could not work for a full day.

With respect to his alcohol abuse, employee admitted that his license had been revoked for DWI in December 1978 and that he has been drinking following his work injury of August 1979 because he has "nothing else to do now." His driving without a license resulted in the 60-day term in the Minneapolis Workhouse in August and September 1980. Employee insisted, however, that he never missed work because of his drinking and never was charged with DWI while on the job. Deiley testified that he had never had a better worker and that employee did not drink while working for him. Following his workhouse term, employee applied for seven maintenance jobs, motivated at least in part by his need to obtain general assistance, and said that he was refused work because of the lifting restriction. He said also that he has not applied for a renewed driver's license because he does not own an automobile and could not do the heavy lifting which he said had been required in every truck driving job he had held.

Dr. Johnson, who examined employee for relators on November 12, 1979, diagnosed both degenerative disc disease and alcoholism and, as stated, expressed the opinion that employee could then lift as much as 25 pounds and could drive a truck on local deliveries if he were not required to lift more than that amount nor to do work requiring repeated lifting and bending. Both Dr. Johnson and Dr. Osland assessed employee's permanent partial disability at 10% of the back. Dr. Osland expressed the opinions that employee could not perform work requiring prolonged sitting or standing, that he would probably have continuing difficulty if he were to return to truck driving, and that he has been temporarily totally disabled from the date of the injury to January 21, 1981, when the witness' deposition was taken.

The majority of the Court of Appeals concluded that employee has been temporarily totally disabled except for the periods of his employment and incarceration, that his alcoholism did not affect his performance of his work, and that his back condition is a substantial contributing factor in his continuing disability. This court has

---

**2.** I find nothing in the record to suggest that discontinuance of benefits was based on the grounds, stated in the majority opinion, that employee did perform limited services as a truckdriver for a period of time "but refused rehabilitation, and declined to diligently seek gainful employment." The employer, as the majority states, discharged employee in October 1979 after learning that he had been driving following revocation of his driver's license in December 1978. It advanced employee's discharge as an event which made it "impractical" to undertake rehabilitation of employee. The employer did not offer him work not requiring a driver's license and offered him no job subject to his obtaining a license.

repeatedly stated that it will reverse the findings of the Court of Appeals only if they are manifestly contrary to the evidence or if consideration of the evidence and the reasonable inferences therefrom require reasonable minds to adopt a contrary conclusion. *Smith v. Armour and Co.,* 316 N.W.2d 925 (Minn.1982). That standard of review in my judgment requires affirmance. Contrary to the implication of the majority opinion, employee was not required to establish that he was totally incapacitated from all work. Instead, we have consistently held that a person is totally disabled within the meaning of the Workers' Compensation Act as long as his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income. *Schulte v. C.H. Peterson Construction Co.,* 278 Minn. 79, 83, 153 N.W.2d 130, 133-4 (1967). Moreover, we have not required that an employee affirmatively seek and be denied employment as a prerequisite to his being found totally disabled. *Scott v. Southview Chevrolet Co.,* 267 N.W.2d 185, 189 (Minn.1978); *Findorff v. Pinkerton's Inc.,* 295 N.W.2d 373, 376 (Minn.1980). In this case, however, employee did attempt to do light work for the cement company and made some efforts to obtain maintenance work, those endeavors being thwarted because he could not perform heavy work.

Whatever the extent of his alcohol problem—which he contends has been exacerbated by his inability to work—the evidence is clear that employee's physical condition, due to the work-related back injury, in combination with his age, limited education, prior work experience involving truck driving or other heavy manual labor, and lack of transferable job skills, has resulted in his continuing temporary total disability. I would affirm.

SCOTT, Justice (dissenting).

I concur in the dissent of Mr. Justice Todd.