Bruce REDGATE, Respondent,

v.

SROGA'S STANDARD SERVICE and American Mutual Insurance Company, Respondents (CX–87–1759), Relators (C1–87–1763),

New Hope Foods/Hardee's and Garlington Group, Relators (CX–87–1759), Respondents (C1–87–1763).

Nos. CX–87–1759, C1–87–1763.

Supreme Court of Minnesota.

April 8, 1988.

Gregory A. McClenahan, Minneapolis, for Hardee's and Garlington Group.

Roderick C. Cosgritt, Minneapolis, for Sroga's Standard Service and American Mut. Ins. Co., relators C1–87–1763.

Lorrie L. Bescheinen, Minneapolis, for Bruce Redgate.

## OPINION

SIMONETT, Justice.

This case raises the issue whether, under post–1983 law, an injured employee who has not reached maximum medical improvement, must make a diligent search for light duty work to receive temporary total disability benefits. We hold there is a diligent search requirement and that the evidence supports the compensation judge's finding that no diligent search was made in this case. We reverse the contrary rulings of the Workers' Compensation Court of Appeals, but affirm the weekly wage calculation.

Employee-respondent Bruce Redgate injured his back on two occasions, the first in 1983 while working as a mechanic for relator Sroga's Standard Service, and the second time, in November 1985, while working at relator New Hope Foods, a Hardee's restaurant.[1]

After the 1983 injury, the employee, with the help of a qualified rehabilitation consultant (QRC), found work as a baker and then as a trainee-manager at Hardee's. At this time, the employee was under doctor's orders to limit his back movements and not to lift more than 35 pounds, and he was receiving temporary partial disability benefits from his first employer, Sroga. On November 4, 1985, the employee reinjured his back at Hardee's and was unable to return to work. Some 4 months later, on March 10, 1986, the employee visited his doctor, Marlen Strefling, an orthopedist, who advised him to limit his lifting and bending to table height, not to lift over 10

---

1. Sroga's is insured by American Mutual Insurance Company and Hardee's is insured by the Garlington Group; both insurers, of course, are also relators.

to 15 pounds, and to engage only in work where he could sit or stand as he saw fit. Whether Dr. Strefling released the employee for work at that time and whether the employee looked for work after that date was disputed. Two weeks after the doctor's visit, the employee enrolled in a 2-year electronics course, which, however, was not part of a certified retraining program.

Some further months later, on July 3, 1986, a hearing was held before the compensation judge on the employee's claim for temporary total benefits from November 4, 1985, to the time of the hearing and continuing, plus concurrent temporary partial benefits continuing from the first injury. The employee was still not working, but was in school. The compensation judge awarded the employee temporary total and temporary partial disability benefits from November 4, 1985, the date of the second injury at Hardee's, to March 10, 1986, when the judge found the employee had been released by his doctor for light duty work. The judge further found that the employee had not reached maximum medical improvement (MMI) and, ruling that the employee was required to make a diligent job search to be entitled to continuing temporary total and temporary partial benefits, went on to find that the employee had not made that search.

On appeal, the WCCA (in a split decision) ruled that under new 1983 law the employee was not required to make a diligent search, and, therefore, the employee was entitled to temporary total benefits after March 10, 1986, and continuing; but, further, that even if a diligent search were required, the compensation judge's finding of no diligent search lacked substantial evidentiary support, and the WCCA therefore substituted its own finding that a diligent search had been made. Without explanation, the WCCA further ruled the employee was entitled to temporary partial benefits after March 10. The employers and insurers now appeal, by certiorari, to us.

The issues are these: (1) Is a diligent job search required under the "new law"? (2) Did the WCCA err in setting aside the compensation judge's finding of an inadequate job search? and (3) Was the weekly wage rate for benefits payable to March 10 properly calculated?

### I.

Under pre–1983 compensation law, there were times an injured worker was obligated to search for work he or she was capable of performing. *See, e.g., Johnson v. State, Department of Veterans Affairs,* 400 N.W.2d 729 (Minn.1987); *Mayer v. Erickson Decorators,* 372 N.W.2d 729 (Minn. 1985); *Rogde v. United Van Bus Delivery,* 330 N.W.2d 715 (Minn.1983). The issue here is whether under the new law an injured worker is obligated to make a diligent search for light duty work prior to reaching maximum medical improvement in order to receive temporary total disability benefits.

The compensation judge found that as of March 10, 1986, the employee was capable of light duty work but had not yet reached maximum medical improvement. In this situation, Minn.Stat. § 176.101, subds. 3f and 3h (1986), relating to partially disabled employees, provides:

> Subd. 3f. If the employer offers a job * * * and the job is within the employee's physical limitations; or the employer procures a job for the employee with another employer * * *; or the employee accepts a job with another employer * * *, the employee's temporary total compensation shall cease.
>
> \*      \*      \*      \*      \*      \*
>
> Subd. 3h. An employee who accepts a job under * * * subdivision 3f and begins that job shall receive temporary partial compensation * * *.

Under this statutory scheme, the compensation judge believed that the employee was obligated to search for suitable work. The WCCA, on the other hand, thought otherwise. Under this new law, MMI determines when temporary total benefits should cease, *i.e.,* 90 days after the worker reaches MMI. *See* section 176.101, subd. 3c (1986). In addition, temporary total benefits cease earlier if the worker is offered a job similar in economic status to the work-

732

er's job at the time of injury, *id.*, or if the worker is offered a light duty job he or she is capable of performing, *id.*, subd. 3f. If the worker accepts a lower paying job, then temporary partial benefits are awarded. *Id.*, subd. 3h. The statute is silent about the worker searching for any work. Consequently, the WCCA concluded that no diligent job search is required for entitlement to temporary total benefits under the new law. The WCCA thought it particularly significant that the diligent search requirement expressly set out in the old law, Minn.Stat. § 176.101, subd. 2 (1982), was not expressly carried over into the new law.[2]

Thus, the WCCA held that under the new law an injured worker is entitled to temporary total benefits even though capable of performing work, as long as the worker is not offered a job he can do and has not reached maximum medical improvement. Relators argue, however, that the omission of the diligent job search from the new law was not intended to change the basic notion of the workers' compensation law that a worker is totally disabled only if the worker is physically incapable of performing work or unable to find work he is able to perform.

Under pre–1983 law, the diligent job search requirement seems to have arisen in two different contexts. First, the search requirement applied to partially disabled workers seeking temporary partial disability benefits at the same rate as temporary total benefits. Minn.Stat. § 176.101, subd. 2 (1982), quoted in footnote 2, *supra.* Thus, in *Mayer v. Erickson Decorators, supra,* this court denied both temporary total and temporary partial benefits because of an injured worker's failure to

search diligently for work within his limitations. *See also Johnson v. State Department of Veterans Affairs, supra.* In this context, it appears that the search requirement may no longer exist with respect to injuries occurring after 1983.[3]

The diligent job search requirement also appears in a second context, in determining whether an injured worker is totally disabled. Total disability under the new law exists if an injury "totally incapacitates the employee from working at an occupation which brings the employee an income." Minn.Stat. § 176.101, subd. 5 (1986). This is the same definition of total disability as appeared under the old law and has been explained in *Schulte v. C.H. Peterson Construction Co.,* 278 Minn. 79, 83, 153 N.W. 2d 130, 133–34 (1967), as meaning:

[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income. * * * *The concept of temporary total disability is primarily dependent upon the employee's ability to find and hold a job, not his physical condition.* [Footnotes omitted, emphasis added.]

*See also McClish v. Pan–O–Gold Baking Co.,* 336 N.W.2d 538, 542 (Minn.1983). The significance of *Schulte* is that total disability is not solely based on an inability to perform work, but may also be based on an inability to find work an injured employee is capable of performing. *See generally* 2 Larson, *Workers Compensation Law* §§ 57.50, 57.60 (1986). Larson also notes that if an employee is not obviously unem-

2. Minn.Stat. § 176.101, subd. 2 (1982), provided in part:
   If the employer does not furnish the worker with work which he can do in his temporary partially disabled condition *and he is unable to procure such work with another employer, after reasonably diligent effort,* the employee shall be paid at the full compensation rate for his or her temporary total disability. [Emphasis added.]

3. We note, however, that employee Redgate's entitlement to temporary partial benefits is gov-

erned by the law in effect on December 14, 1983, the date of his first injury. We need not determine the effect of the changes to section 176.101, subd. 2 (1982) on employee's temporary partial benefits because those changes were not effective until after employee's first injury. Thus, employee's entitlement to continuing temporary partial benefits will turn on whether he made diligent efforts to search for work. Minn. Stat. § 176.101, subd. 2 (1982). We deal with this issue in part II, *infra.*

ployable or reduced to "odd-lot jobs," then it is not unreasonable to require the employee to establish unavailability of work for a person in his or her circumstances by showing reasonable efforts to secure suitable employment. *Id.* at § 57.61(d).

It seems to us, therefore, that a diligent job search remains relevant in determining total disability. The injured employee proves total disability by showing that work the employee is capable of doing is unavailable, and unavailability is shown by a diligent job search to no avail. A failure to make a diligent job search goes "to the evidentiary weight of the assertion that [the employee] is totally disabled." *Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185, 188–89 (Minn.1978). Thus in *Rogde v. United Van Bus Delivery*, 330 N.W.2d 715 (Minn.1983), where the evidence was that the worker could lift 25 pounds and was capable of performing some work, we held the worker was obligated to make a job search. On the other hand, in *Scott, supra,* where the evidence was that because of the employee's age, poor health, and lack of training, he "was completely unemployable and would never be able to locate a job," 267 N.W.2d at 187, we found the employee need not present further evidence that he had looked for work.

We hold that unless factors such as age, physical condition, training, and experience indicate an employee is incapable of obtaining anything but sporadic work with insubstantial income, an employee under current law must prove total disability by showing unavailability of suitable work after a diligent search. *See Schulte, supra.* The need for this kind of evidence was not affected by the 1983 amendments. It follows that employees who are capable of work must make a diligent job search to establish total disability even if maximum medical improvement has not yet been reached. The new law distinguishes between periods before and after MMI for purposes of cutting off temporary total disability benefits; therefore, it does not affect the basic principles underlying entitlement to total disability in the first instance.

## II.

This brings us to the next issue, namely, whether employee Redgate conducted a diligent job search, or, to put it another way, whether his job search, such as it was, was sufficient to establish his total disability. The compensation judge found that the employee had not "demonstrated inability to find other employment after a reasonable and diligent search." The WCCA, in an alternative holding, stated that the employee's "less than diligent efforts" to find work should not disqualify him from benefits and set aside the compensation judge's finding of inadequate job search as lacking substantial evidentiary support.

On March 10, 1986, Dr. Strefling explained to the employee he could work if he avoided certain lifting, stooping, and bending, if he lifted no more than 10 to 15 pounds, and if he could sit or stand as he saw fit. With these restrictions, the doctor stated that a "light duty job situation would have been acceptable." At trial, the employee admitted he understood, as of March 10, 1986, that his doctor was allowing him to return to work with these restrictions, after first checking with the doctor. At a pretrial deposition, the employee testified, however, that he had not actively looked for work after the Hardee's injury, "[o]ther than just browsing through the paper." At trial the employee testified differently, stating that he had made a persistent job search, with telephone calls and personal contacts, and producing a job log documenting his search from February 1986 through June 1986. Two weeks after the March 10 doctor's visit, the employee enrolled in an electronics course, attending classes 6 hours a day; but he said he continued to make job inquiries by phone and would have quit school if he had found a job. Both the employee and the employers called a QRC as a witness; the employee's expert said the employee was unemployable, but he had made no labor market survey; the employers' expert testified, on the basis of a labor market survey, that there was suitable work available for the employee. Because Hardee's was disputing liability, it had offered the employee no

rehabilitation placement assistance, but Hardee's argued that the employee knew from past experience with a QRC how to make a job search and that it had offered to take the employee back. Employee Redgate is 27 years old, a high school graduate, with vo-tech training in light engine repair. His supervisors at Hardee's said he was an excellent worker and had been promoted to their management trainee program.

■ A job search that produces no job, if it is to be persuasive of the fact that, indeed, no job was available, must ordinarily be more than perfunctory; a diligent job search, in other words, is a search that is reasonable under all the facts and circumstances. Often, as in this case, there may be expert testimony on the labor market. Other circumstances to consider are whether the employer has undertaken to provide work or to provide QRC assistance to the employee in finding work.[4]

■ In this case, the evidence on almost every issue was in sharp dispute. There was, for example, the conflicting testimony of the two employment experts, the credibility of the employee's testimony about his job search, as well as conflicting evidence on whether the employee understood his doctor had released him for light work. The compensation judge, as trier of fact, decided these various issues against the employee.

The findings of the compensation judge are to be affirmed "if, in the context of the record as a whole, they are supported by evidence that a reasonable mind might accept as adequate." *Hengemuhle v. Long*

*Prairie Jaycees*, 358 N.W.2d 54, 59 (Minn. 1984). In *Hengemuhle*, we said the WCCA must give due weight to the opportunity of the compensation judge to judge credibility, and we noted that "where the evidence is conflicting or more than one inference may reasonably be drawn from the evidence, the findings of the compensation judge are to be upheld." *Id.* at 60. Here, a majority of the WCCA has chosen to make its own evaluation of the credibility and probative value of witness testimony and to choose different inferences from the evidence than the compensation judge.[5] This is not the WCCA's role. The point is not whether we or the WCCA might have viewed the evidence differently, but whether the findings of the compensation judge are supported by evidence that a reasonable mind might accept as adequate. Under this test, and keeping in mind the scope of review applicable to the WCCA and this court, we can only conclude that the findings of the compensation judge have substantial evidentiary support. The contrary findings of the WCCA are reversed and the findings of compensation judge, including the denial of temporary total and temporary partial benefits after March 10, 1986, are reinstated.

### III.

■ One final issue remains. Employer Sroga claims the compensation judge erred in computing the employee's temporary partial disability rate for the period for which benefits were granted, namely, from November 4, 1985, to March 10, 1986.

In computing the employee's average weekly wage at Hardee's on November 4, 1985, the compensation judge correctly re-

---

**4.** There may be instances where the employer has no light duty work for the employee but the employee will be returning to his old job after a relatively short recuperation. At oral argument, the parties seemed to think that in this situation it may not be practical or reasonable to expect the employee to look for temporary light duty work elsewhere while recuperating in order to establish total disability. This, however, is not such a case.

**5.** For example, the WCCA decided to accept the testimony of the employee's employment expert over that of the employers' expert because the latter's testimony was "flawed." It is true, the

employers' expert was originally unaware of certain additional restrictions Dr. Strefling had placed on the employee's activities, but this was called to her attention and then taken into account by her in her opinions. The compensation judge, taking all of this into consideration, chose to find the testimony of the employers' expert more persuasive. The evidentiary value of a reasonable job search is illustrated here, because if a reasonable but unsuccessful job search had been made by the employee, that fact would have gone to contradict the expert's testimony that suitable employment was available.

jected Sroga's claim that the wages earned in the week before the injury should be used because the employee's hours per week fluctuated; instead, the compensation judge totaled the employee's wages for the preceding 26 weeks and divided the total by 26, arriving at an average wage of $161.09. Minn.Stat. § 176.011, subds. 3, 18 (1986), require the calculation to be based on total number of days worked per week and the total number of weeks worked in the preceding 6 months. The WCCA affirmed the compensation judge's calculation, reasoning that the employee's hourly wage of $4.25 times the industry-wide average of 40 hours worked per week would be $170, close to the actual rate used. While the statute should be followed, we think the wage rate as determined by the compensation judge is sufficiently adequate and there is nothing to be gained by remanding for information that it appears may not in any event be available. We affirm the wage rate calculation.

Affirmed in part and reversed in part.

YETKA, Justice (dissenting).

I would affirm the Workers' Compensation Court of Appeals; thus, I dissent from the majority opinion. The record discloses that, for a period of months, namely, from February through May 1986, Mr. Redgate made numerous inquiries of prospective employers from whom he was seeking work. He received job opportunity notices from the newspapers and personal contacts. Moreover, he kept a log of those contacts for that period. The notations in the log were not successfully rebutted.

What further evidence must an employee submit to prove a search to find work? I agree with the Workers' Compensation Court of Appeals, which found that Redgate made a diligent search for work and that the employer produced no evidence that Redgate had failed to conduct such a search. The Workers' Compensation Court of Appeals was thus justified under our enunciated standards of review in reversing the compensation judge.

WAHL, Justice (dissenting).
I join the dissent of Justice Yetka.