Nagib MAKTARI, Relator,

v.

**FORD MOTOR COMPANY, Self–Insured and John Hancock Mutual Life Insurance Co., Respondents.**

No. CX–91–1877.

Supreme Court of Minnesota.

Feb. 21, 1992.

Rehearing Denied April 20, 1992.

Mark J. Fellman, Hertogs, Fluegel, Sieben, Polk, Jones & Laverdiere, St. Paul, for relator.

Lee J. Keller, Dorsey & Whitney, Minneapolis, for respondents.

Considered and decided by the court en banc without oral argument.

COYNE, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals reversing an award of temporary total benefits under Minn.Stat. § 176.101, subd. 3j.[1] We reverse and remand for further proceedings in conformance with this opinion.

In 1978 Nagib Maktari started working at the Ford Motor Company plant in Dearborn, Michigan. Following a layoff, the employee transferred to the Ford plant in St. Paul, Minnesota under the terms of a collective bargaining agreement between Ford and the United Auto Workers. The same agreement authorized a return to Michigan as soon as work became available there, a right this employee intended to exercise because his relatives lived there. At the St. Paul plant, the employee held a variety of positions on the line, including utility repair, wire welder, hanging truck hoods, "cowl-vent hanging," and insulating seats on the chassis line.

On February 12, 1987, while working at the St. Paul plant, the employee injured his low back and thereafter received various workers' compensation benefits, including rehabilitation assistance. In February 1988 he returned to work at the St. Paul plant in a "door fitter" position, a position that would accommodate his back condition.[2] In June 1988 the employee attained maximum medical improvement, and the employer then paid impairment compensation for a 9% permanent partial disability to the body as a whole.

In October 1988 the employee transferred back to Michigan where he was assigned a "spring seat" position, work that did not aggravate his back condition. After a few months, he was "bumped" from that position by another employee with more seniority. He then remained at the Dearborn plant but was assigned other work which became medically inadvisable. The record demonstrates that, as a consequence, the employee was placed on medical leave status and paid accident and sickness benefits. The spring seat position was again made available to the employee for limited periods of time between September 1989 and February 1990; however, on each occasion, he was "bumped" from the position by another worker with more seniority, went on medical leave, and received accident and sickness benefits.

The compensation judge awarded temporary total benefits under Minn.Stat. § 176.101, subd. 3j (1990) for those periods of time the employee was off work because the employer said it had no work the employee could do in his partially disabled condition. The employee was also awarded attorney fees. The employee appealed from the calculation of attorney fees, and the employer cross-appealed from the award of wage loss benefits. The WCCA,

---

1. Minn.Stat. § 176.101, subd. 3j (1990) provides:
   **Subd. 3j. Medically unable to continue work.** (a) If the employee has started the job offered under subdivision 3d and is medically unable to continue at that job because of the injury, that employee shall receive temporary total compensation pursuant to clause (b). In addition, the employer who was the employer at the time of the injury shall provide rehabilitation consultation by a qualified rehabilitation consultant. Further rehabilitation, if deemed appropriate, is governed by section 176.102.
   (b) Temporary total compensation shall be paid for up to 90 days after the employee has reached maximum medical improvement or 90 days after the end of an approved retraining plan, whichever is later. The temporary total compensation shall cease at any time within the 90-day period that the employee begins work meeting the requirements of subdivision 3e or 3f. If no job is offered to the employee by the end of this 90-day period, the employee shall receive economic recovery compensation pursuant to this section but reduced by the impairment compensation previously received by the employee for the same disability.

2. This position was identified by the employee and his qualified rehabilitation consultant as one that fit within the medically recommended physical restrictions.

sitting en banc, reversed the award of wage loss benefits, thereby rendering moot the attorney fee issue.

In reversing the award of wage loss benefits, the WCCA concluded that the employee's periods of unemployment were the result of the "union contract following the 'bump'" and therefore "more akin to an economic layoff than to medical inability to continue [working] as contemplated by the statute." As the employee argues, however, his unemployment continued because the employer stated it had no work that would accommodate his disability, and he was on medical leave status, not layoff status.

In enacting the "two tier" compensation system for permanent partial disability, "the legislature sought to provide economic incentive for employers to provide suitable employment for injured employees, to eliminate the unlimited open-ended nature of weekly temporary total compensation, and to encourage employees to accept suitable employment." *Parson v. Holman Erection Co.*, 428 N.W.2d 72, 76 (Minn.1988) (citation omitted). This is accomplished, in part, by ending temporary total compensation when the employee returns to work or 90 days after the employee attains maximum medical improvement or completes a retraining program. Minn.Stat. § 176.101, subds. 3e and 3f. If, within 90 days after attaining medical improvement, the employee has a job which is both physically and economically "suitable" within the meaning of Minn.Stat. § 176.101, subd. 3e(b), then impairment compensation is paid. If an employee does not have what is commonly called a "3e" job, economic recovery compensation is paid instead. Minn.Stat. § 176.101, subd. 3p (1990). We have held that "3e" employment cannot be inherently temporary. *Cassem v. Crenlo, Inc.*, 470 N.W.2d 102, 107 (Minn.1991). Even when the employer provides appropriate "3e" work and pays impairment compensation, a medical inability to continue working may renew the obligation to pay temporary total compensation and, in some instances, to increase compensation for impairment to economic recovery compensation. Minn. Stat. § 176.101, subd. 3j (1990).

Here the seniority provisions of the collective bargaining agreement under which Maktari is employed has, in effect, made his post-injury job assignments inherently temporary, thereby imposing on the employer a continuing obligation to provide "3e" work in order to avoid payment of economic recovery compensation. No doubt the series of "bumps" was precipitated by economic conditions, but Maktari's release from employment cannot be characterized as a layoff because of economic conditions if, were it not for his work-related injury, he could have bumped a less senior employee. To put it another way, if Maktari was prevented from exercising his right to bump a less senior employee only by his medical inability to do the work assigned to any less senior employee, then the cessation or interruption of his employment appears to be more closely related to a medical inability to continue work than to a layoff because of economic conditions. Although we recognize that the circumstances of this case do not fit quite neatly within either subdivision 3i or 3j of section 176.101, it must be remembered that the two-tier compensation system is the injured worker's exclusive remedy, *see, e.g., Karst v. F.C. Hayer Co., Inc.*, 447 N.W.2d 180 (Minn.1989), and it seems to us unlikely that the legislature intended to put an employee who has demonstrated the ability to perform a "3e" job and a willingness to accept whatever other "appropriate work" the employer provides in a worse position than the employee in the typical situation covered by subdivision 3j.[3]

Accordingly, we hold that to the extent collectively bargained agreement has made the employee's post-injury job assignments inherently temporary, the employer is obliged to make available work which meets the requirements of section 176.101, subd. 3e(b) for as long as the

---

**3.** The employee believed Ford could have provided work that he could have done in his partially disabled condition.

employee could avoid a layoff, were it not for his work-related injury, by bumping a less senior employee. The economic status produced by the substituted work assignment need not exceed that which the employee would have enjoyed had his injury not precluded his bumping the employee who was his immediate junior. During those periods that work within the employee's physical limitations is lost because of the terms of the collectively bargained agreement, the employee is entitled to compensation payable at the same intervals and at the same rate as temporary total compensation until the employee shall have received an amount equal to economic recovery compensation reduced by the impairment compensation previously received by the employee pursuant to section 176.-101 for the same disability. Whenever the employee returns to work, such payments shall cease, and only the unpaid portion of economic recovery compensation reduced by impairment compensation and payments previously received by the employee shall be used to determine further benefits if the employee is again unemployed because of the operation of the collectively bargained agreement.[4]

We therefore reverse the decision of the WCCA and remand for a determination of whether the employee was entitled, as he contends, to bump a less senior employee but was precluded from exercising that right by his physical inability to perform the work assigned to such less senior employees and, if so, the award of such benefits as the employee may be entitled pursuant to this opinion and for the calculation of attorney fees in accordance with *Ransom v. Ford Motor Co.*, 472 N.W.2d 134 (Minn.1991).

The employee is awarded $400 in attorney fees.

Reversed and remanded.

---

**4.** This is not meant to limit or affect any compensation available under subdivision 3j if, and when, a period of unemployment is precipitated by a medical inability to continue at the "3e" or substitute job because of the injury.