**Larry L. BORYCA, Relator,**

v.

**MARVIN LUMBER & CEDAR and Lumbermen's Underwriting Alliance, Respondents.**

**No. C8–92–253.**

Supreme Court of Minnesota.

Aug. 7, 1992.

John A. Winters, Crookston, for relator.

James R. Waldhauser, Susan M. Pasch, Cousineau, McGuire & Anderson, Minneapolis, for respondents.

Wilbur W. Fluegel, Sieben, Grose, Von Holtum, McCoy & Carey, Minneapolis, for amicus, Minnesota Trial Lawyers Assn.

Bradley Ervin, St. Paul, for amicus, Minnesota Chamber of Commerce.

KEITH, Chief Justice.

The Workers' Compensation Court of Appeals reversed a compensation judge's award of permanent total compensation. At issue is whether a worker who has been discharged for misconduct may be deprived of permanent total compensation. We reverse and reinstate the decision of the compensation judge.

The employee-relator, Larry L. Boryca, was employed by Marvin Lumber & Cedar Company (Marvin Lumber) in Warroad, Minnesota, from 1984 through 1989. During his employment, he sustained two compensable low back injuries, the first in 1986 and the second in 1987. Marvin Lumber accepted liability and paid various workers' compensation benefits. Following the second injury, Boryca continued to have low back problems and in April 1988, he underwent spinal fusion surgery. When Boryca's back condition failed to improve, he underwent further diagnostic testing, the results of which showed that the fusion had failed.

In late spring 1989, Boryca was authorized to return to work with significant restrictions, and his doctor recommended he seek employment other than manual labor. Marvin Lumber then made a formal, written offer of light-duty work which he accepted; but when he and his doctors felt this work too demanding, a dispute ensued over his functional capacities. Although Marvin Lumber eventually transferred Boryca to a lighter duty, sedentary position, by late October 1989, his local orthopedic surgeon felt he was incapable of any employment at that time. On October 30, 1989, Boryca filed a claim for temporary total/temporary partial benefits.

On November 6, 1989, Boryca made three telephone calls directed to Marvin Lumber and Lumbermen's Underwriting employees in which he threatened to kill himself and certain individuals involved in his workers' compensation dispute. As a result of this conduct, his employment with Marvin Lumber was terminated.

In January 1990, Boryca was awarded social security disability benefits and in July 1990, following a hearing on his October 1989 workers compensation claim petition, he was awarded temporary total benefits through July 15, 1990, 90 days past maximum medical improvement.

Boryca then filed, in August 1990, a claim for permanent total compensation which was heard by a different compensation judge in March 1991. Finding Boryca unemployable without retraining and incapable of completing retraining because of his disability, the compensation judge determined he was permanently totally disabled as of July 16, 1990, and awarded benefits accordingly. The compensation judge concluded the termination for misconduct was irrelevant to employer/insurer's obligation for permanent total compensation. On appeal, the WCCA reversed, concluding that under the 1983 amendments to the Workers' Compensation Act, Boryca's discharge from employment considered suitable resulted in the forfeiture of all compensation, including permanent total compensation, or, in the alternative, that employee had not established permanent total disability.

I.

At the outset, it must be remembered that the basic purpose of the 1983 amendments to the Workers' Compensation Act is "to provide economic incentive for employers to provide suitable employment for injured employees, to eliminate the unlimited open-ended nature of weekly temporary compensation, and to encourage employees to accept suitable employment." *Maktari v. Ford Motor Co.*, 481 N.W.2d 44, 46 (Minn.1992), *quoting Parson v. Holman Erection Co.*, 428 N.W.2d 72, 76 (Minn.

1988). To this end, an injured worker's temporary total benefits will cease no later than 90 days after maximum medical improvement or the end of retraining; temporary partial compensation becomes payable if required; and permanent partial disability benefits are payable as either impairment compensation or the more costly economic recovery compensation depending on whether there has been a job offer meeting the statutory criteria. *Cassem v. Crenlo, Inc.*, 470 N.W.2d 102, 105 (Minn.1991); Minn.Stat. § 176.101, subd. 3a, 3b, 3e and 3p (1990). If the employee rejects a job offered pursuant to subdivision 3e, temporary total compensation ceases; and should the employee secure other employment, neither temporary partial compensation nor rehabilitation services are available. Minn. Stat. § 176.101, subd. 3*l*, 3n (1990); *see* Altman, Benanav, Keefe & Volz, *Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments*, 13 Wm. Mitchell L.Rev. 843, 874 (1987). Implicit in these provisions, therefore, is the employee's ability to return to work.

In contrast, the provision pertaining to permanently totally disabled workers is predicated on an "inability to return to work," and the kinds of benefits available are not tethered to job offers. Minn.Stat. § 176.101, subd. 3*o* (1990).[1] For instance, unlike the temporarily disabled worker whose weekly temporary total benefits cease at maximum medical improvement, at which point permanent partial compensation is paid, the permanently disabled worker may receive concurrent permanent total and permanent partial disability compensation; and once the permanent partial compensation is exhausted, the weekly permanent total compensation continues. An employer is not obligated to offer the permanently disabled employee a "3e" job in order to avoid payment of economic recovery compensation because it is assumed the employee will not be returning to work. In addition, an employee may be determined to be permanently totally disabled after economic recovery compensation has been paid, and there is no offset against future permanent total compensation. Also, payment of economic recovery compensation does not end the employer's obligation for permanent total compensation. Altman, *supra*, at 887.

In the case currently before us, the WCCA concluded that, pursuant to Minn. Stat. § 176.101, subd. 3*l* (1990)[2] as a result of his discharge from employment for misconduct, employee had forfeited his right to permanent total compensation. Subdivision 3*l* states that if the employee fails to

---

1. Minn.Stat. § 176.101, subd. 3*o* (1990) provides:

    **Inability to return to work.** (a) An employee who is permanently totally disabled pursuant to subdivision 5 shall receive impairment compensation as determined pursuant to subdivision 3b. This compensation is payable in addition to permanent total compensation pursuant to subdivision 4 and is payable concurrently. In this case the impairment compensation shall be paid in the same intervals and amount as the permanent total compensation was initially paid, and the impairment compensation shall cease when the amount due under subdivision 3b is reached. If this employee returns to work at any job during the period the impairment compensation is being paid, the remaining impairment compensation due shall be paid in a lump sum 30 days after the employee has returned to work and no further temporary total compensation shall be paid.

2. Minn.Stat. § 176.101, subd. 3*l* (1990) provides:

    **Failure to accept job offer.** If the employee has been offered a job under subdivision 3e and has refused the offer, the impairment compensation shall not be paid in a lump sum but shall be paid in the same interval and amount that temporary total compensation was initially paid. This compensation shall not be escalated pursuant to section 176.645. Temporary total compensation shall cease upon the employee's refusal to accept the job offered and no further or additional temporary total compensation is payable for that injury. The payment of the periodic impairment compensation shall cease when the amount the employee is eligible to receive under subdivision 3b is reached, after which time the employee shall not receive additional impairment compensation or any other compensation under this chapter unless the employee has a greater permanent partial disability than already compensated for.

accept a "3e" job, temporary total compensation ceases. Additionally, periodic impairment compensation ceases when the amount to which employee is entitled is reached and "the employee shall not receive additional impairment compensation *or any other compensation under this chapter* unless the employee has a greater permanent partial disability than already compensated for." Minn.Stat. § 176.101, subd. 3*l* (1990) (emphasis added). The Workers' Compensation Court of Appeals interpreted the italicized phrase to include permanent total compensation.

Certainly the sanctions contained in subdivision 3*l* are intended to encourage prompt re-entry into the workforce. But where a permanent total disability determination is grounded on the inability to return to work on a permanent basis, it seems to us the impetus of subdivision 3*l*— the loss of benefits—becomes meaningless. Neither the structure of the statutory scheme, the underlying purposes to be served, nor logic suggests the legislature intended that subdivision 3*l* would be invoked in permanent total disability situations. We therefore hold the Act does not deprive a worker discharged for misconduct of permanent total compensation for which he would otherwise be eligible. *Cf. Marsolek v. George A. Hormel Co.*, 438 N.W.2d 922, 924 (Minn.1989) (discharge for misconduct suspends the right to wage loss benefits until it is demonstrated the work-related disability is the cause of the employee's inability to find or hold new employment).[3]

## II.

The WCCA also reversed the compensation judge's permanent total disability determination because there was no evidence of a diligent job search.[4] The failure to search for work, however, goes to the weight of the assertion the employee is totally disabled. *Redgate v. Sroga's Standard Service*, 421 N.W.2d 729, 733 (Minn. 1988), *citing Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185, 188–89 (Minn.1978); *see Henry v. Sears, Roebuck & Co.*, 286 N.W.2d 720, 723 (Minn.1979). "[T]otal disability is not solely based on an inability to perform work, but may also be based on an inability to find work an injured employee is capable of performing." *Redgate*, 421 N.W.2d at 732 (citations omitted). An injured employee who is capable of some work "must make a diligent job search to establish total disability." *Id.* at 733. Where, however, the evidence is that because of employee's age, poor health and lack of training, he is completely unemployable, the employee need not present further evidence that he looked for work. *Id.* (citations omitted). Here, the compensation judge determined employee was permanently totally disabled where he was incapable of any employment and that this was likely to continue for an indefinite period of time. *See Cavanaugh v. Frederick Willys, Inc.*, 361 N.W.2d 49 (Minn. 1985). From our review of the record, we can only conclude this determination had ample evidentiary support. *See Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984). "The point is not

---

3. The whole scheme of workers' compensation is one of reciprocal concessions by the employer and employee. "In exchange for guaranteed compensation for injury regardless of * * * fault or solvency of at-fault fellow employees, the employee is limited to a fixed schedule of recovery and gives up any right to a common-law action against the employer." *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 120–21, 257 N.W.2d 679, 684 (1977). The employer surrenders the common law defenses available in negligence actions but is protected against the hazards and expense of litigation, and faces fixed and limited liability that can be covered by insurance. *See Lunderberg v. Bierman*, 241 Minn. 349, 363, 63 N.W.2d 355, 364–65 (1954); 1

Larson, *The Law of Workmen's Compensation*, § 1.10 (1992). In view of what some call an "industrial bargain" between the employer and employee, it seems to us especially onerous to forever bar an injured employee from receiving permanent total benefits otherwise due where it is absolutely clear his inability to work is caused by the compensable injury, and not by the misconduct.

4. The legislature recently amended the definition of total disability. 1992 Minn.Laws, ch. 510, art. 1, § 5.

whether we or the WCCA might have viewed the evidence differently, but whether the findings of the compensation judge are supported by evidence that a reasonable mind might accept as adequate." *Redgate*, 421 N.W.2d at 734.

Reversed and decision of compensation judge reinstated.